## Lee *et al. versus* Jeddo Coal Company

1. The recitals in the deed of county commissioners made in pursuance of a sale of land for taxes, prima facie raise a legal presumption that the commissioners did their duty and made the sale according to law.

2. Jenks *v.* Wright, 11 P. F. Smith 410; Hoffman *v.* Bell, 11 Id. 444; Hess *v.* Herrington, 23 Id. 438, distinguished.

March 6th and 7th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Luzerne county:* Of January Term 1875, No. 137.

Ejectment by D. W. Lee and others against The Jeddo Coal Company for a tract of land in Foster, formerly part of Butler township, Luzerne county.

The plaintiffs having shown title out of the Commonwealth, and the assessments of the tract on the unseated list from 1832 down, and the assessments for the years 1848–49 in Butler township, on the unseated list, followed by a treasurer's sale in 1850 to the commissioners, and the deed to the commissioners dated August 1st 1850, and duly recorded, offered the Commissioners' Sale Book of unseated lands for the year 1857, showing conditions of the sales of October 20th 1857, of lands purchased at the treasurer's sale of 1850–52, and the record of the sale of the land in question to Jay Gould, to be followed by the commissioners' deed for the same to the said Jay Gould, dated October 28th 1857, reciting the treasurer's deed to them of August 1st 1850; that the land had remained unredeemed for upwards of five years; that the commissioners had advertised and, at a public sale, sold the land to Jay Gould.

This commissioners' deed contained the following clause:—

"And whereas, five years, the time limited for the redemption as mentioned in the 6th sect. of the aforesaid act (13th of March 1815) having fully expired, and by a further supplement to the act, entitled 'An Act directing the mode of selling unseated lands for taxes and other purposes,' passed 29th of March 1824 (8 Sm. Laws 291), by sect. 1 the commissioners are authorized to sell such lands as before mentioned for the best price that can be obtained for the same, and the commissioners having advertised that a public sale of the said described tract of unseated land among other lands, would be held at the court house in Wilkesbarre, on the 20th day of October 1857, did at the said time and place last mentioned, and by adjournment from day to day, and on the 20th day of October 1857, expose the same to sale by public vendue or outcry, and sold the same to Jay Gould, of the township of Buck, in the county of Luzerne, and state of Pennsylvania, for the sum of $1.50, he being the highest and best bidder, and that the highest and best price bidden for the same."

[Lee v. Jeddo Coal Co.]

To this offer the defendant objected that the plaintiffs had not shown the pre-requisites of the Act of 29th March 1824 (8 Sm. Laws 290, Purd. Dig. 1452, pl. 50), and the court, Dana, J., sustained the objection, giving the plaintiffs an exception.

The plaintiffs then renewed their offer of the record of commissioners' sale and the commissioners' deed just rejected, and offered to accompany it with proof that the sale of the commissioners, October 20th 1857, including the land in question, was a public one; that it was duly advertised in the "Luzerne Union," one of the newspapers published in Wilkesbarre, in the county of Luzerne, during the requisite statutory period prior to the said sales, and that the commissioners directed that such advertisement should be made in all the other newspapers published in Luzerne county.

Objected to by defendant as to the offer to prove that the commissioners directed that such advertisement should be made in all the other newspapers published in Luzerne county, for the reason that such directions are not a compliance with the Act of 29th March 1824, there being at that time a number of other papers published in Luzerne county ; it being conceded that at that time there were other newspapers published in said county, and that this objection being made by the defendants in this record, claiming title under parties other than the county, affirmative proof by the plaintiffs of publication, as required by the act, is an essential pre-requisite to the validity of the commissioners' sale and deed.

By the court: "The fact stated in the foregoing objection to plaintiffs' offer, that there were other papers than the 'Luzerne Union' published in Luzerne county, at and prior to the date of said commissioners' sale, being conceded by the plaintiffs, the foregoing objections being made, not by the county, but by the defendants in possession, claiming to have acquired title prior to the said sale of 1857, and the fact that they so claim, although not the validity of such claim, being conceded, are sustained.

"The statutory direction contained in the Act of 1824, that notice should be given by the county commissioners by publication in all the newspapers of the county where the land lies, for the period of thirty days preceding such sales, particularly designating the tracts to be sold, is precise, and in Jenks v. Wright, 11 P. F. Smith 410, is declared to be an element in the power of the commissioners to sell, which, if wanting, renders the sale void. Their mere direction that such advertisement should be inserted and made in all the newspapers published in the county, without actually carrying out the same, is not a compliance with the act, which prescribes publication, and not a mere direction to publish. The evidence is therefore rejected, and, at the plaintiffs' instance, a bill of exceptions is sealed."

The verdict was for the defendant, and after judgment, the

[Lee *v.* Jeddo Coal Co.]

plaintiffs took this writ, assigning for error the rejection of the foregoing offers of evidence.

*J. Vaughan Darling, Henry W. Palmer* and *E. P. Darling,* for plaintiffs in error.—It is a well-settled rule that the county commissioners, in the discharge of their public functions, are presumed to have done their duty, and he who alleges misfeasance or malfeasance on their part must prove it.

The absolute inability to sustain any tax sale made under laws which were in force prior to the Act of 1815 is well known. They are summed up by Justice HUSTON in Peters *v.* Heasley, 10 Watts 210, who states as the chief difficulty, that " The sale might have been perfectly regular, everything required by law might have been strictly performed, and yet after the lapse of a few years this could not all be proved in court," &c. And the same judge, in Morton *v.* Harris, 9 Watts 322, asserts that " Although we have for a long series of years had laws under which lands on which no person resided and no improvements were made, were sold for taxes, and many hundred sales have taken place, yet no instance occurs, previous to 1815, in which the purchaser at a sale for taxes has succeeded in making out a good title in court," &c.

It is admitted that the Act of 1815 was passed to cure this great evil, and that it did cure it effectually in all cases of sales by the treasurer, including therein sales by them to the commissioners : Peters *v.* Heasley, *supra.* The intent of the legislature is not then doubtful. It was " that no alleged irregularity in the assessment, or in the process or otherwise, shall be construed or taken to affect the title of the purchaser, but the same shall be declared to be good and legal." It could not have been the intent of the legislature, therefore, to make a distinction in regard to tax sales ; to give to treasurer's sale the protection denied to commis-· sioners' sale, in case such protection were needed. Our contention is but a statement of the familiar maxim that where acts are of an official nature, or require the concurrence of official persons, *omnia præsumuntur rite et solenniter esse acta donec probetur in contrarium.* It must never, in applying this principle to the question in hand, be forgotten that sales by commissioners are not proceedings *in invitum.* They are not in ˙defeasance of estates vested in others. They are not even proceedings in execution of a power specially conferred. But they are simply and only sales by the actual owners of estates, fully and absolutely vested in them in fee simple. For when titles become vested in a county under purchases from the treasurer, the estate in the county becomes an  absolute one immediately upon the expiration of the time limited for redemption by the former owner ; and the commissioners in selling are but the visible, material representatives of the county, which must act through them if it act at all : Huston *v.* Foster, 1

[Lee v. Jeddo Coal Co.]

Watts 477 ; Steiner v. Coxe, 4 Barr 13 ; Kirkpatrick v. Mathiot, 4 W. & S. 251; Peters v. Heasley, 10 Watts 208; McCoy v. Michew, 7 W. & S. 386. We submit that a case can scarcely be imagined, to which the maxim above quoted is more fully applicable.

It is claimed that the cases of Jenks v. Wright, 11 P. F. Smith 410, and Hess v. Herrington, 23 Id. 439, introduced a contrary doctrine. We contend that the true reading of these cases induces no such result. In Jenks v. Wright, the point actually decided was that a commissioners' sale *shown to have been a private one* was invalid, and in Hess v. Harrington, the objection to the deed was one appearing on the face of the record relative to the manner in which the books were kept.

*Charles Pike* and *Henry M. Hoyt*, for defendants in error.— The offer of the plaintiffs in its very terms, shows a non-compliance with the very acts upon which the presumption of regularity must be based, and the very state of facts disclosed by, and coupled with, the offer, positively exclude the operation of the maxim *omnia præsumuntur rite acta, &c.*

Before the Act of 1824, there was no prescribed manner of giving notice—in fact no notice was required by the Act of 1815. But by the Act of 1824, before any such sale is made the advertisement as prescribed by the statute must be made. The manner of the sale is directed by the law in positive terms, and the commissioners had no right to sell and make a deed until they had done what was required of them.

A statute which provides for divesting title to lands by proceedings not according to the course of the common law, must be strictly construed; and he who claims under the statute, must affirmatively show a compliance with all its provisions: Jenks *et al. v.* Wright, 11 P. F. Smith 410.

The principal object of the Act of 1824, in requiring public notice and description of the land in sales by the commissioners, was that the owners might know and avail themselves of the permissive right to redeem after five years. The precise statutory direction is an element in the power of the commissioners to sell, which, if wanting, there being no provisions of law curative of irregularities, as in the Act of 1815, must necessarily render a sale, without the observance of these pre-requisites, void. The mandate of the law being so, its disregard would, as a general rule, be sufficient to render void the act of its ministers: Hess v. Herrington, 23 P. F. Smith 438.

The curative provisions of the Act of March 13th 1815 (6 Sm. Laws 301) do not apply to a sale by the commissioners of unseated lands bought by them at treasurer's sale. Abundant authorities establish that county commissioners cannot *sell* at private sale, after the five years allowed for redemption have expired. They can, how-

ever, permit the owners to redeem after that period, and make deed to them : Steiner *v.* Coxe, 4 Barr 13 ; John and Paull *v.* Rush, 2 Harris 339.

Under these last-cited authorities, we submit, the owners of this land had a right to redeem at any time up to a sale, as prescribed by the Act of 1824. Until then, the owners stood in the nature of debtors to the county, and it was not only the privilege but the duty of the commissioners to have received the taxes from, and make deed to, the owners.

Chief Justice AGNEW delivered the opinion of the court, May 7th 1877.

The precise point presented in this record, is the rejection of the deed of the commissioners of the county to Jay Gould, on the ground that the plaintiffs had not shown affirmatively, the publication of notice of the sale, pursuant to the provision in the Act of 29th March 1824. The deed recites the advertisement of a public sale at a certain time and place, an adjournment, and a sale by public vendue to Mr. Gould. The defendant in error would vary the question by referring to the terms of the second offer of the deed, as an admission that due publication had not been made. This fails to reach the true question. The court having rejected the deed when first offered, because no proof had been given of the publication, the plaintiffs were forced to make a second offer in the hope of meeting the views of the court. Perhaps the offer did contain all the plaintiffs were then able to prove, after a lapse of eighteen years, but it does not follow that due publication had not been made. The simple question is whether the plaintiffs were entitled to give their commissioners' deed in evidence.

Jenks *v.* Wright, 11 P. F. Smith 410, is no authority against this, for in that case the deed was received in evidence without objection, and the adverse party resorted to evidence to overturn it. It therefore simply decides that a commissioners' deed regularly in evidence, may be shown to be invalid for a sufficient cause. The sale was *private*, and clearly void. The Act of 29th March 1824, provides that " the commissioners of the several counties are hereby authorized to sell at *public* sale, all and any part or parts of the unseated lands which have been purchased for the use of the county." The law having prescribed a public sale as the mode of exercising the authority, none other can be pursued. This follows from the general principles governing the performance of a mere authority coupled with no interest, and also from the duty enjoined by the Act of 21st March 1806, 1 Br. Purd. 58, pl. 5. So far the decision in Jenks *v.* Wright was that of the whole court. But when the learned and able chief justice passed beyond this point, he expressed his own opinion only. The case called for no decision on the question of publication. Publication, if made, would not sanction the invalid act of a subsequent *private* sale. But even the

[Lee v. Jeddo Coal Co.]

*obiter dictum* of a judge so able and experienced in tax titles, is entitled to weight; and therefore, while we leave the question open for future decision, we cannot suffer the occasion to pass without saying, that the effect of non-publication upon the validity of title was not decided in Jenks v. Wright.

Hoffman v. Bell, 11 P. F. Smith 444, had relation to the deed of a treasurer, not of the commissioners. He had gone out of office, and of course had no authority to execute a tax deed. Hess v. Herrington, 23 P. F. Smith 438, is relied on. But the decision was against the objection made to the deed, and it repeated merely the general statement made in Jenks v. Wright, that sales by the commissioners are not within the curative provisions of the Act of 13th March 1815, and indeed merely meant that the act of a *private* person could not be cured, for it had no validity. But why does not the curative provision of the Act of 1815 apply to commissioners' sales? The answer had been already and forcibly given by C. J. GIBSON, in Huston v. Foster, 1 Watts 478 : "Because (he says) those sales were never in need of it, the common principle (viz., of strictness in adherence to authority), which it was intended to subvert, being inapplicable to a disposition by the owner himself." After five years the title of the county is absolute, as held in many cases. It is shown very clearly by Chief Justice GIBSON, in Steiner v. Coxe, 4 Barr 25, decided in 1846, and the first case, so far as I know, in which *permissive* redemption after five years was sustained. If the owner had a right to redeem after the expiration of the limit, his redemption would not be permissive. See also the following cases : Peters v. Heasley, 10 Watts 211; Kirkpatrick v. Mathiot, 4 W. & S. 254; Diamond Coal Co. v. Fisher, 7 Harris 267 ; Coxe v. Wolcott, 3 Casey 158 ; Russel v. Reed, Id. 169 ; City v. Miller, 13 Wright 456. But when divestiture of the owner's title is involved, the curative provision of the Act of 1815 is applied even to sales by the treasurer to the commissioners : Peters v. Heasley, *supra ;* Laird v. Hiester, 12 Harris 453. It should not be overlooked that the 2d section of the Act of 29th March 1824 expressly declares that the deed of the commissioners, when acknowledged before a justice of the peace, shall be good and valid to all intents and purposes for such title as the said commissioners had a right to convey. It must be borne in mind also that the authority to sell was not conferred by the Act of 1824, but first given by the 7th section of the Act of 1815. This section forbade a sale by them for less than the taxes, costs and accrued interest. A leading purpose of the Act of 1824 was to enable the commissioners to sell for the best price that can be obtained. The opinion in Jenks v. Wright suggests as a chief purpose of the Act of 1824, that notice to the former owners was required to enable them to exercise their *permissive* right of redemp-

[Lee *v.* Jeddo Coal Co.]

tion.    This is an anachronism.    No such right was known, until established in Steiner *v.* Coxe in 1846.

Returning to the original question, the right to give the commissioners' deed in evidence in the first instance, we may notice that Huston *v.* Foster was followed by other cases ruling the same point: Peters *v.* Heasley, *supra ;* McCoy *v.* Michew, 7 W. & S. 386 ; Russel *v.* Reed, *supra.*    The current of authority therefore is in favor of the presumption that a sale recited in the deed as regularly made, was made according to law.    To the cases above cited we may add Coxe *v.* Deringer, 28 P. F. Smith 271, and Coxe *v.* Deringer, 1 Norris 236.    It is true these cases did not go the whole length of the former decisions, the facts not demanding it, and Jenks *v.* Wright seeming to stand in the way.    In the second case the opinion leaned more strongly against the dictum in Jenks *v.* Wright.

We are of opinion that a legal presumption arises from the recital in the deed, that the commissioners did their duty and made the sale according to law.    The presumption is *prima facie* at least; whether absolute we need not decide.

Judgment reversed and a *venire facias de novo* awarded.