## Knupp, Appellant, v. Syms.

*Tax sales—Unseated land—Requisites of good title.*

In order to establish a good tax title to unseated land, it must appear that at the time of the assessment the land was unseated, that a tax was, in fact, assessed upon it by the proper officers, that the taxes had been due and unpaid for one whole year, and remained unpaid at the date of the sale, and that there had been no redemption.

*Tax sales—Payment of tax by agent—Redemption.*

A tax title cannot be sustained where it appears by the books of the treasurer and by other records that an agent of the owners of unseated land bought in the land at a tax sale, that the taxes had been regularly assessed, and that the agent before the maturity of the deed paid the taxes, and that these had been accepted by the treasurer.

Argued April 30, 1900. Appeal, No. 432, Jan. T., 1899, by plaintiff, from judgment of C. P. Warren Co., June T., 1898, No. 35, in favor of defendants on trial by court without a jury in case of John Knupp v. Anna Watson Syms, D. I. Ball and Wheeler & Dusenbury. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL and BROWN, JJ. Reversed.

Ejectment for land in Watson township.

The facts are fully stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff. Defendants appealed.

*Error assigned* was in entering judgment for defendant.

*J. H. Osmer*, with him *N. F. Osmer* and *W. J. Knupp*, for

appellant.—The sale by the treasurer was not made upon, and is in no way supported by the assessments proved.

An assessment of a tax by some proper authority is essential to the validity of a sale of unseated land by the treasurer: Bratton v. Mitchell, 1 Watts & Serg. 310; McReynolds v. Longenberger, 57 Pa. 13; Laird v. Hiester, 24 Pa. 463; Breisch v. Coxe, 81 Pa. 348.

When instruments are more than thirty years old, unblemished by alterations and found in the proper custody, they prove themselves: McReynolds v. Longenberger, 57 Pa. 13.

We think it a safe principle that memoranda made by a person in the ordinary course of his business of acts or matters which his duty in such business requires him to do for others, in the case of his death are admissible as evidence of the acts or matters so done: Henry v. Overs, 4 Watts, 48; Nicholls v. Webb, 8 Wheat. 326.

D. I. Ball with him W. D. Brown, for appellees.—The deed is the best evidence of the sale by the treasurer: Thompson v. Chase, 2 Grant, 367; Coxe v. Derringer, 82 Pa. 236; Coxe v. Derringer, 78 Pa. 271; Lee v. Jeddo Coal Co., 84 Pa. 74; Thompson v. Chase, 2 Grant, 369.

The purchaser at a tax sale in which the quantity but not the locality is given, of part of a tract of land sold, has an unrestricted choice of location: Coxe v. Blanden, 1 Watts, 533; McCord v. Bergautz, 7 Watts, 490; Brotherton v. Livingston, 3 W. & S. 337; Crum v. Burke, 25 Pa. 381; Beegle v. Wentz, 55 Pa. 375; Hess v. Harrington, 73 Pa. 448; Tryon v. Munson, 77 Pa. 259; Everhart v. Dolph, 133 Pa. 628.

Whiting's claim is at most a stale equity: McKean & Elk Land & Imp. Co. v. Clay, 149 Pa. 282; Evans's App., 81 Pa. 278.

The act of limitations is a bar to plaintiff's recovery: Act of April 3, 1804, sec. 3; Robb v. Bowen, 9 Pa. 71; Sheik v. McElroy, 20 Pa. 25; Stewart v. Trevor, 56 Pa. 374.

OPINION BY MR. JUSTICE DEAN, October 11, 1901:

This is an ejectment, brought to recover possession of the undivided one-half part of 100 acres of land, in Watson township, Warren county. The 100 acres was part of a tract num-

bered 3014, containing 990 acres. The warrant was originally issued to LeRoy and others, December 12, 1792, and then by subsequent conveyances down to November 8, 1836, it passed to one Jacob McCormick. Up to this time there is no irregularity or flaw, and it is agreed that McCormick is the source of title to both parties. McCormick, by deed dated June 18, 1841, conveyed the 100 acres in dispute to Caleb Whiting, Jr., who, on December 21, 1841, conveyed the undivided one half of it to Abial Platt. Caleb Whiting, Jr., having died, his heirs at law, on May 18, 1884, conveyed their half of the 100 acres to W. J. Knupp, who by deed dated May 24, 1894, conveyed it to John Knupp, this plaintiff.

As to the Abial Platt half, Platt died testate, June 18, 1856, having devised his half to H. K. Cushing and D. W. Cushing, and their title passed by deed dated October 6, 1868, to George P. Briggs, who, by deed dated May 28, 1873, in which is described the whole 100 acres, conveyed it to L. F. Watson. It appeared, that Briggs's claim to the whole 100 acres is based on a treasurer's sale of the whole warrant, 990 acres, for unpaid taxes, for the years 1846 and 1847; one W. W. Hodges was the purchaser and claimed under his purchase this 100 acres and took a deed for the same. He made a conveyance October 17, 1860, to Briggs for the 100 acres.

It appeared that McCormick had, before the year 1840, run a line across the middle of the tract, from east to west, dividing it into two nearly equal portions; the northern half he retained; the southern, containing 550 acres he divided into four pieces, one of which, the 100 acres in dispute, as before noticed, he conveyed to Caleb Whiting, Jr., who in the same year, 1841, conveyed the undivided one half of it to Platt. The other three pieces McCormick conveyed to other purchasers.

As truly said by the learned judge of the court below : " The crucial question in the controversy is, did the treasurer's sale of 1848 contain the requisites essential to convey a good title to the 100 acres ? " That a treasurer's sale of land including this 100 acres, was made in 1848, to one W. W. Hodges, appears clearly enough; also, that a deed in pursuance of such sale was made to him. Does it appear that the steps preliminary to such sale to make it a valid one and pass this land to Hodges were taken ? It must have appeared, that at the time of the assess-

ment the land was unseated; that a tax was, in fact, assessed upon it by the proper officers, and that the taxes had been due and unpaid for one whole year and remained unpaid at the date of the sale: Laird v. Hiester, 24 Pa. 452. And there must have been no redemption. What is the assessment relied on to support this sale? It is as follows:

| Year | War. | No. Acres | Val. | Co. | State | School | Road |
|------|------|-----------|------|-----|-------|--------|------|
| 1846 | 3014 | 990 | 742 | 2.23 | 2.23 | 1.48 | 7.42 |
| 1847 | 3014 | 990 | 742 | $2.22\frac{1}{2}$ | $2.21\frac{1}{2}$ | 1.48 | 7.42 |

The total tax assessed for those years was $26.71.

The court below finds that this was a valid assessment of 3014 and that a sale of the whole tract would pass to the purchaser any subdivision of it on which the tax had not been paid, and that, as Hodges had appropriated this whole 100 acres as land on which there was default in payment, his deed for the same to Briggs conveyed the whole, not only the Platt half, but the Whiting, Jr., half, now claimed by Knupp, the plaintiff.

It is somewhat difficult to determine from the deed just what the treasurer intended to sell; he first offered, he seems to say, 100 acres, part of 3014, but getting no bidders, he then offered the whole tract 3014, as assessed, 990 acres, and Hodges became the buyer. But the deed then goes on to say, that he conveys to him an unseated tract of land of 100 acres, part of 3014, situated in Limestone township, Warren county, and all the estate therein of Jacob McCormick. Whether this was sufficiently certain to designate the 100 acres sold, or to enable the purchaser to successfully lay claim to any part of 3014, is very doubtful, under the authorities; but it is not necessary to discuss that question; we rule the case on another ground, not strongly pressed in the court below, but which seems to us decisive. The question still remains, under the evidence, was the tax on the 100 acres paid immediately after the sale was made, the tax on the nonpayment of which the sale was based? The treasurer did not sell, at least, did not convey more than 100 acres of a 990 acre tract. Taking the statement in the deed, the taxes due and unpaid on this 100 acres were $4.32. The plaintiff offered in evidence an old list of assessments and sales, marked sales list for 1848, found in the treasurer's office; also another book called the treasurer's journal; both were ancient

in appearance, but they were not kept systematically, nor in the order of the books after 1854, nor were they bound as the subsequent ones.    The purpose was to show, that the same tax for which the land was sold had afterwards, before maturity of the deed, been paid by the purchaser to and accepted by the treasurer.

In making up his findings, the learned court disregarded this evidence as altogether insufficient to show any redemption of the land after the sale.    We think this was error and that the entries, if given their proper significance, established the fact sought to be proved.    W. W. Hodges, the purchaser, was at the time and for years before and afterwards, agent for the owners, Whiting and Platt, concerning the taxes and assessment of this very land.    This fact was established clearly by entries in the books as early as 1840.    He was prothonotary of the county and appears to have been a man of prominence.    The so-called treasurer's journal contained this entry, made under date of December 17, 1894: "Received of W. W. Hodges, $10.40, taxes in full for 1846 and 1847, one 100 acres lot, No. 3014, 65 acres, No. 701 and 652; 165 acres in Limestone township, purchased at treasurer's sale, June, 1848; County, $1.64; State, $1.64; School, $1.09; and Road, $6.07."

In view of the fact that the rejected sales list shows no sale of the tract to Hodges, in 1848, and that Hodges himself, in December following the date of the sale, paid in full, and the treasurer received as in full the very defaulted taxes on which the treasurer's deed is based, must be deemed equivalent to a redemption.    As before stated, without calling attention to evidence in detail apparent in the records, that Hodges acted from 1840 until 1852, as the agent of Whiting and Platt for these lands, it must be presumed his purchase of this 100 acres was in trust for his principals and when he paid the taxes in full in December, 1848, long before the time for redemption had expired, he, by the consent of the purchaser, himself being the purchaser, did for his principals all they were bound to do to save their land.    The books offered and disregarded, it is true, are not as clear as they should be, nor have they been kept with that care and accuracy the public have a right to expect; further, important books and papers which would show more clearly all the facts, may and probably have been lost; but, it must be

remembered that this transaction occurred half a century ago; after that lapse of time, we must ascertain the truth from the best evidence we can get. There is no duty on the taxpayer to see that the proper books are kept, or that they are properly kept and securely preserved. It is his duty to pay his taxes once; the commonwealth has no right to more than it demands; he ought not to lose his land because of any default in the public officer. That Hodges, after the deed had been acknowledged and delivered to him, should go to the county treasurer and pay in full the very taxes on the nonpayment of which his title depended, is wholly incredible and is reconcilable with no other theory than the one, that he was acting throughout for his principals, Whiting and Platt. The grantees of Whiting and Platt, not being affected by the alleged sale to Hodges, in 1848, the subsequent sales, in 1876 and 1878, passed no title to defendants as against their cotenant in common, this plaintiff; therefore, the judgment of the court below is reversed and judgment is now entered for plaintiff, for the undivided one half of the land in dispute.