# Sallada et al. *v.* Mock et al., Appellants.

*Ejectment—Evidence—Common source of title—Sheriff's sale—Relationship—Ouster—Adverse possession—Notice — Presumption —Assessment books—Tax receipts—Affidavit of defense—Sci. fa. sur mortgage.*

1. In ejectment it is not necessary to show title back of the common source.

2. When the sheriff sells land of a defendant in a judgment, who is in possession, defendant cannot make a defense against the purchaser, as the latter acquires a right to defendant's possession at least, which will support ejectment against him.

3. A judicial sale of real estate made by the sheriff may be considered a sale by operation of law, and at least as binding and conclusive upon defendant in the execution, as if he had made it himself in person or by his attorney, duly authorized.

4. Where defendant in the execution continues in possession after the sheriff's sale in subordination to the title of the sheriff's vendee, the presumption is that the possession so continues, and proof sufficient to overcome the presumption must show that the holder of the record title had express notice that the party in possession was claiming adversely.

5. If, in such case, acts or declarations are relied upon to show adverse possession, they must be equivalent to an actual ouster.

6. Where, on a scire facias to foreclose a mortgage, an affidavit of defense is filed, such affidavit cannot be set up as the inception of an adverse possession by the defendant in the execution as against the purchaser at the sheriff's sale following a judgment in the proceeding; and this is especially the case, where the affidavit set up nothing by way of title, and the purchaser is a brother-in-law of the defendant, and the former never made any objection to the defendant remaining in possession, although the record title was in himself.

7. Under such circumstances, it would take strong proof of a hostile holding to start the inception of a title by adverse possession.

8. While assessment books and tax receipts are not proof of title, yet they are evidence of claim of title, and the extent thereof, and may be the basis of inference that the property was owned by the person in whose name it was assessed.

*Appeals—Assignments of error—Rules of court.*

9. Assignments of error which do not comply with the rules of court will not be considered.

Argued May 10, 1921.  Appeal, No. 448, Jan. **T.**, 1921, by defendants, from judgment of C. P. Northumberland Co., Feb. T., 1919, No. 103, on verdict for plaintiffs, in case of Harry E. Sallada et al., executors of John J. Sallada, deceased, v. Addison Mock et al.  Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.  Affirmed.

Ejectment for a lot of land in the Second Ward of Shamokin.  Before MOSER, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs.  Defendants appealed.

*Error assigned,* among others, was order overruling defendant's motion for judgment n. o. v., quoting the record.

*John E. Jenkins,* with him *Albert Lloyd,* for appellants.—Mary Ann Snyder's affidavit of defense filed 26th January, 1876, was an express denial of the right of plaintiff in the writ to recover by foreclosure of the mortgage.  Such hostile act sets the statute in operation: Dikeman v. Parrish, 6 Pa. 210.

In actions involving the character of the occupancy of land the occupant's own declaration while in possession of the premises as well as the understanding of his neighbors are proper evidence of the character of his claim. Such declarations accompanying his acts constitute part of the res gestæ and as such are always received in evidence in question of possession: Greenwich C. & C. Co. v. Learn, 234 Pa. 180.

As evidence of title tax assessments are inadmissible: Hockenburry v. Snyder, 2 W. & S. 240; Groft v. Weakland, 34 Pa. 304; Quin v. Brady, 8 W. & S. 139; James v. Bream, 263 Pa. 305.

*Charles C. Lark,* for appellees.—The purchaser under regular process acquires a right to defendant's possession, whatever it may be founded on, right or wrong: Ferris v. Irons, 83 Pa. 179.

Assessment books are competent to show continuity of claim during intervals not covered by paper title: Sailor v. Hertzog, 10 Pa. 296; Van Kirk v. Clark, 16 S. & R. 286; Hockenburry v. Snyder, 2 W. & S. 240; James v. Bream, 263 Pa. 305; Green v. Schrack, 16 Pa. Superior Ct. 26; Fuller v. Cole, 33 Pa. Superior Ct. 563.

When the possession of one person is shown to have been in subordination to the title of another, the presumption is that the possession so continued: Johns v. Johns, 244 Pa. 48; O'Boyle v. Kelly, 249 Pa. 13.

A defendant in ejectment who holds under the plaintiff, having obtained possession from the plaintiff himself, or from his predecessors in title, cannot, while such possession lasts, set up adverse title, either to himself or to another: Watson v. Gilday, 11 S. & R. 337; Kline v. Johnston, 24 Pa. 72; Duncan v. Madara, 106 Pa. 562.

OPINION BY MR. JUSTICE SCHAFFER, July 1, 1921:

This is an action of ejectment for property in the Borough of Shamokin. Plaintiffs are devisees of John J. Sallada, defendants, heirs of Mary Ann Snyder. The jury found for plaintiffs and defendants have appealed.

Our view of the case eliminates from consideration a number of matters which have been urged upon us, and brings it within a much narrower scope than it assumed on the trial in the court below.

Both parties claim through Mary Ann Snyder, defendants as her heirs at law, plaintiffs as devisees of John J. Sallada, who acquired title from the Ashland Saving Fund & Loan Association, purchaser at a sheriff's sale on a mortgage given by Mary Ann Snyder. Since both claimants go back to a common source of title, the questions raised by appellants as to the insufficiency of the proofs of plaintiffs' paper title, prior to Mary Ann

Snyder's ownership, fade out of the case; for it was not necessary to show title back of the common source: Riddle v. Murphy, 7 S. & R. 230; Patton v. Goldsborough, 9 S. & R. 47; Turner v. Reynolds, 23 Pa. 199; Miller v. Miller, 2 Yeates 294.

Defendants claim title by adverse possession, first asserted, so they allege, by Mary Ann Snyder, in possession of the property, and continued by her daughter, Hattie E. Mock, the two adverse holdings covering a period of more than forty years. We fail to see where this adverse holding had its origin as claimed by defendants. Mary Ann Snyder acquired title to the property by deed from Hugh McWilliams and wife, dated April 1, 1875. On the same date, for part of the purchase money, she executed a mortgage to McWilliams, in which her husband joined. This mortgage was assigned by McWilliams to Samuel John on October 5, 1875, who, on August 7, 1876, assigned it to the Ashland Saving Fund & Loan Association. A scire facias was issued on it December 16, 1875, at the suit of McWilliams to the use of John. On January 26, 1876, an affidavit of defense was filed by Mary Ann Snyder, and thereafter, on a rule of reference, arbitrators were chosen, who awarded against her; from this judgment, she did not appeal. The judgment was marked to the use of the Ashland Saving Fund & Loan Association and it proceeded with the foreclosure and purchased the property at the sheriff's sale.

It is claimed by appellants, that the inception of the adverse holding by Mary Ann Snyder, was by the filing of the affidavit of defense in this foreclosure proceeding. To whom was it adverse? She was in possession. Her grantor, McWilliams, was not asserting ownership or a right of possession in the property. When it was filed, he did not own the mortgage; it had been assigned to Samuel John and the scire facias had been brought to his use. He was not in the chain of title and asserted no right in the property save that of collecting from it the amount due on the mortgage which had been assigned to

him. Furthermore, the affidavit of defense set up nothing by way of title to the property, it simply averred a payment on account of the mortgage, admitted a certain amount of money to be due and alleged the coverture of Mary Ann Snyder, and because of this that she had been informed plaintiffs had no right to recover. No adverse possession against anybody was avowed.

After the filing of this affidavit, the foreclosure proceeding continued its course and ripened into a judgment, from which she did not appeal. The appropriate writ of execution issued on the judgment, the sheriff's sale was had and the use-plaintiff was the purchaser. By this proceeding and the deed from the sheriff, every interest and claim of title which Mary Ann Snyder had or could assert in the property, including her claim of adverse possession, if she had such a claim, was sold and wiped out and passed to the purchaser, the Ashland Saving Fund & Loan Association, and from it to John J. Sallada, its alienee (Ferris v. Irons, 83 Pa. 179, 181), so that, it will be seen, the alleged beginning of the assertion of an adverse interest by Mary Ann Snyder has no existence, at least so far as its assertion in the affidavit of defense is concerned.

In giving consideration to defendants' claim of title by adverse possession, one circumstance should never be lost sight of, and that is the relationship of the parties. Mary Ann Snyder was the sister of John J. Sallada's wife and he was uncle by marriage of Hattie E. Mock, Mary Ann Snyder's daughter. That which might take on the aspect of a hostile possession under certain circumstances may have no such appearance when this relationship is considered.

We have then Mary Ann Snyder's interest in the property divested by the sheriff's sale and her brother-in-law, John J. Sallada, taking title from the sheriff's vendee. She remained in possession of course without claim of right so far as he was concerned. Common experience would indicate it was with his permission and by his

license, because of a family understanding and a desire to provide her the home which she had lost by the sheriff's sale. Under such circumstances, it would take strong proof of a hostile holding to start the inception of a title in her.

In 1882 or 1883, she remodeled the dwelling to some extent and made an addition to it for which apparently she paid; about the same time she leased a small house on the rear of the property and in 1887 sold it and had it removed; she and her daughter built some houses on the rear of the lot at a cost of about $1,400, and paid the contractor for the cost of them, but the proofs indicate that this money was repaid by John J. Sallada. Mary Ann Snyder and Hattie E. Mock appear to have made some slight repairs to the property for which they paid; and they leased some of the houses to tenants and received the rents. It is shown that once, when John J. Sallada spoke of the property as his in the presence of Mary Ann Snyder, the latter made some comment indicating she thought the property was still hers. The first of the acts above enumerated took place in 1882; she died in 1896. This was too short a time for title to ripen in her even had her acts and declarations been sufficient to establish a hostile claim. After Mary Ann Snyder's death the possession of the property was continued by her daughter, Hattie E. Mock, until her death in 1918, and thereafter by her children until this suit was brought December 30, 1918. No specific acts indicating hostile possession by Hattie E. Mock after her mother's death are shown.

The property never was assessed to Mary Ann Snyder or Hattie E. Mock. Following the sheriff's sale, it was assessed to the Ashland Saving Fund & Loan Association and, after the title became vested in him, to John J. Sallada. He paid the taxes on the property from the time he acquired it until his death, paid for improvements, repairs and street paving assessments, with the knowledge of Mary Ann Snyder and Hattie E. Mock. While

assessment books and tax receipts are not proof of title, yet they are evidence of claim of title and its extent, and may be the basis of inference that the property is owned by the person in whose name it was assessed: Vankirk v. Clark, 16 S. & R. 286; Irwin v. Patchen, 164 Pa. 51; James v. Bream, 263 Pa. 305. Particularly is this so where they go to substantiate the paper title.

The possession of Mary Ann Snyder was under and in subordination to John J. Sallada; had he sought to eject her, following the sheriff's sale, there can be no question of his power so to do. When the sheriff sells the land of a defendant in a judgment, who is in possession, he cannot make any defense against the purchaser, as the latter acquires a right to the defendant's possession at least, which will support ejectment against him: Snavely v. Wagner, 3 Pa. 275; Ferris v. Irons, 83 Pa. 179. A judicial sale of real estate made by the sheriff "may be considered a sale by operation of law, and at least as binding and conclusive upon the defendant in the execution as if he had made it himself in person or by his attorney duly authorized": Young v. Algeo, 3 Watts 223. As Mary Ann Snyder continued in possession after the sheriff's sale in subordination to the title of the sheriff's vendee and its alienee, Sallada, the presumption is that the possession so continued, and proof sufficient to overcome the presumption must show that the holder of the record title had express notice that the party in possession was claiming adversely: Johns v. Johns, 244 Pa. 48. "When the possession of one person is shown to have been once in subordination to the title of another, it will not be adjudicated afterward adverse without clear and positive proof of its having distinctly become so; for every presumption is in favor of the possession continuing in the same subordination to the title, and the proof must reach so far as to show that the adverse possession assumed was brought to the knowledge of the holder of the title. The holder of the record title must have actual notice brought home to him of the claim of adverse pos-

session, and the statute would not begin to run until the possession became adverse by some decisive acts or declarations done or made in such a manner, and under such circumstances, as to leave no doubt......that they were brought home to the knowledge of the holder of the record title. In brief, the rule requires that the specific acts or declarations relied upon must be the equivalent of an actual ouster": O'Boyle v. Kelly, 249 Pa. 13. There was in this case no such notice nor were there such acts or declarations.

As we view the case, the claim of defendants, that title is vested in them by virtue of the statute of limitations, and their hostile possession for more than twenty-one years, under the circumstances here shown, considering the relationship of the parties, was a tenuous one, and, when the court permitted it to go to the jury, appellants were accorded every right to which they were entitled. We have examined all the assignments of error, a number of which are not in accordance with our rules. We find in them nothing which would warrant a reversal; they are all overruled and the judgment is affirmed.