Babcock Lumber Company, Appellant, *v.* Faust et al.

20

Argued April 11, 1944. Before KELLER, P. J., BALD-RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*Charles H. Ealy,* with him *Charles F. Uhl, Simon K. Uhl,* of *Uhl, Ealy & Uhl,* and *Miller & Nesbitt,* for appellant.

*Budd B. Boose,* for appellees.

OPINION BY RENO, J., September 27, 1944:

Ejectment was brought to recover possession of portions of the surface of a tract of land owned by plaintiff in Ogle Township, Somerset County, and upon which defendants were using roads and maintaining buildings under mining rights claimed by them. The parties submitted the case to the trial judge sitting without a jury under the Act of April 22, 1874, P. L. 109, as amended by the Act of July 10, 1935, P. L. 640, 12 PS §§688 et seq., and this appeal is from a judgment for defendants in the court below.

By deed dated January 17, 1898, the executor and

heirs of John Irvin, deceased, conveyed to E. V. Babcock seventeen contiguous parcels of land, comprising about 6,415 acres located in Paint and Ogle Townships. The deed contained a provision which, briefly summarized, excepted and reserved from the grant all the coal and fire clay under the seventeen tracts; rights of ingress and egress over each tract for the purpose of prospecting for coal and clay, and for preparing for market, storing and removing coal and clay in its natural or manufactured form; rights to build and operate wagon and railroads on any part of the lands; the right, upon three months' notice to the grantee, to erect tipples and other structures thought by the grantors to be convenient for the proper exploitation and preparation of the minerals and mineral products; the right to erect dwelling houses for occupation by employees of the mines and works; the right to deposit mine waste upon the surface, but in a manner such as not to interfere with the use of any buildings erected by the grantee; the right to permit the subsidence of the surface without liability and likewise to alter the course of subterranean waters; and finally the right to cut standing timber on eight of the tracts for necessary mine purposes. The grantee subsequently conveyed the seventeen tracts to the Babcock Lumber Company.

On November 18, 1935, the county commissioners of Somerset County executed a quitclaim deed to defendants Faust, Straub, and Gould of all the county's interest in the A seam of coal and appurtenances thereto underlying seven of the seventeen parcels. The deed recited that the commissioners had purchased all the minerals under the seven tracts, aggregating 2,597 acres, from the county treasurer on June 9, 1930, and that the grantees had purchased them from the commissioners at a public sale on April 4, 1933. Defendant Holsopple claims no interest except as lessee under

defendant Peacock Coal Company, a mining partner-
ship composed of the defendants, Faust, Straub, and
Gould. The Peacock Coal Company makes no claim as
an entity distinct from its members.

The private road and the buildings used and main-
tained by defendants are located upon two tracts war-
ranted in the names of James and Daniel Clark. The
James Clark tract abuts upon and lies immediately to
the north of State Highway Route 56, and the Daniel
Clark parcel lies adjacent to and north of the James
Clark tract. Title to these tracts is in plaintiff sub-
ject to the reservation, and defendants assert no rights
in the minerals underlying these two tracts. Defend-
ants have undertaken mining operations on three par-
cels, adjoining the Clark tracts to the north and west,
warranted to Abraham Moore, Benjamin Shaw, and
Heieronimus Warner, also known in the vicinity as the
"Pot Ridge" lands, being three of the seven tracts pur-
chased by defendants from the county commissioners.

In 1933, after the commissioners' sale, defendants
began working the A seam underlying the Pot Ridge
lands. Previously, lessees of the Irvin heirs had made
openings in the B and C veins of coal beneath the Pot
Ridge tracts and in conjunction with that operation
had built a road approximately one mile and a quarter
in length extending from Route 56 to the mouth of
their mine over the intervening James Clark and Daniel
Clark parcels. They had also erected a scale house on
the James Clark tract near the public highway. De-
fendants extended the existing private road an addi-
tional quarter mile over the Pot Ridge lands to their
mine opening, and in 1934, with the knowledge and
possibly with the acquiescence of, but without having
given three months' prior notice to, plaintiff, they
erected a dwelling house for their mine foremen and
a tipple and coal storage bin on the James Clark tract
close to the highway. Whether notice was in fact given

is now immaterial, as the provision requiring it was for the convenience of plaintiff, and its president admitted that the space occupied by defendants in no way interfered with plaintiff's lumbering operations. This action was instituted when defendants, as an adjunct to their mining activities, persisted in using the roadway and structures on the surface of the tracts under which they owned no minerals and refused plaintiff's demand for wheelage based upon the amount of coal hauled over the road and rental for the use and occupation of the buildings on the James Clark tract. Plaintiff contends that defendants are entitled to surface rights only over those tracts in which they owned minerals and that the utilization of other lands is a trespass.

I. In their pleadings both parties traced their chain of title to the deed from the heirs and executor of John Irvin, and the agreement upon a common source was therefore conclusive of the title to that date. *Sallada v. Mock,* 271 Pa. 212, 114 A. 652; *Porter v. Hayes,* 293 Pa. 194, 142 A. 282. At the trial plaintiff, after introducing the deed from the Irvin heirs to E. V. Babcock, offered in evidence later deeds conveying to it a paper title to the premises in issue, thus establishing a prima facie case and casting upon defendants the burden of going forward with evidence sufficient to establish their own title if they were to overcome plaintiff's apparent ownership. *Dunn v. Milanovich,* 302 Pa. 184, 152 A. 757.

In the discharge of their burden, defendants undertook to prove that they had become the purchasers of the A seam of coal underlying seven tracts at a public sale of unseated mineral lands for delinquent taxes, and they were therefore obliged to show that at the time of the assessment the land was unseated; that a tax had been assessed upon it by the proper officers; that prior to the sale the taxes had been due and un-

paid for a whole year and that they were still unpaid at the time of the sale; and that the lands so sold had not been redeemed within the statutory period. *Hubley v. Keyser*, 2 P. & W. 496; *Peters v. Heasley*, 10 Watts 208; *Knupp v. Syms*, 200 Pa. 489, 50 A. 210. Defendants introduced records from the offices of the county treasurer and the county commissioners which were sufficient to establish the regularity of the proceedings. The commissioners' unseated land records showed an assessment of taxes against the A vein of coal under the seven tracts claimed by defendants for the years 1928 and 1929. The treasurer's Unseated Land Record showed a return by the collector of these taxes as unpaid for 1928 and 1929. The treasurer's Tax Sale Book reflected a sale on June 9, 1930, by the treasurer to the commissioners of minerals under the seven tracts and a redemption of the B and C seams of coal under the Pot Ridge lands, which had also previously been sold for delinquent taxes, by two of the Irvin heirs, and a complementary record in the commissioners' office recorded the purchase. The Seated and Unseated Land Book kept by the commissioners disclosed the redemption of the B and C veins of coal by the Irvin heirs and the sale of the A coal under seven parcels to defendants in April, 1933. An Unseated Land Sale return maintained by the commissioners set out a sale of minerals under the seven tracts to Gould, Faust, and Straub on April 4, 1933, and the quitclaim deed of November 18, 1935 by the commissioners to defendants recited that the treasurer had sold the minerals to the commissioners on June 9, 1930, and that after a failure by the owners to redeem, the commissioners had sold the A vein of coal with appurtenances at a duly advertised public sale on April 4, 1933. In the absence of countervailing evidence, the recitals in the commissioners' deed under which defendants claim raise a presumption that the commissioners properly discharged

their official duties and conducted the sale according to law. *Lee v. Jeddo Coal Co.,* 84 Pa. 74; *Glass v. Seger,* 265 Pa. 391, 109 A. 211.

II. Complaint is made that the assessment was against the A seam of coal only in the years 1928 and 1929, whereas the treasurer's sale purported to appropriate all the minerals under the seven tracts in satisfaction of the unpaid taxes. The lien for unpaid taxes attaches only to the estate assessed, and that estate, but no more, passes at a public sale even though the authorities assume to convey land against which there had been no valid assessment. *Brundred v. Egbert,* 158 Pa. 552, 28 A. 142; *Brundred v. Egbert,* 164 Pa. 615, 30 A. 503; *Northern Coal & Iron Co. v. Burr,* 42 Pa. Superior Ct. 638. However, defendants' rights rest upon the acquisition of the A seam of coal which was assessed and therefore could be sold for delinquent taxes. If the assessment was not broad enough to include the B and C seams, the defendants, not claiming those seams, are not affected by the irregularity.

III. Another objection to the sufficiency of defendants' title is that the deed from the treasurer to the commissioners was invalid because it was not acknowledged in open court by the treasurer. The treasurer for the year 1930 testified from a record made by him while he was in office that he had executed a deed for the seven tracts sold on June 9, 1930, and that the deed had been acknowledged before a justice of the peace and thereafter delivered to the commissioners. As the deed had been lost before the trial, it was proper to prove its execution and delivery by the testimony of the former treasurer and the records made by him while he was in office and found in the proper custody *Huzzard v. Trego,* 35 Pa. 9; *Watson v. Jones,* 85 Pa. 117. The Act of March 13, 1815, P. L. 177, §9, 72 PS §6136, provides a form of deed which may be used by county treasurers when

unseated lands are purchased at public sale by the commissioners, and provision is made for acknowledgment before justices of the peace of deeds executed in the statutory form. It has been said that such deeds must be acknowledged before a justice of the peace. *Goodman v. Sanger*, 91 Pa. 71; *Canole v. Allen*, 28 Pa. Superior Ct. 244. See Act of April 23, 1909, P. L. 156, §1, 21 PS §153. Cases where tax deeds relied upon by defendants in ejectment have been declared void for want of an acknowledgment in open court (e. g., *Osmer v. Sheasley*, 219 Pa. 390, 68 A. 965; *Grakelow v. Nash*, 98 Pa. Superior Ct. 316) were those in which the defendants had purchased directly from the treasurer at the tax sale, and the decisions did no more than follow the mandate of the Act of April 3, 1804, P. L. 517, §2, 72 PS §6041. The acknowledgment requirement of the Act of 1804 was not disturbed by the Act of May 22, 1933, P. L. 853, §601, 72 PS §5020-601.

This Court said in *Brew v. Sharer*, 42 Pa. Superior Ct. 89, that the Act of July 8, 1885, P. L. 268, 72 PS §§6111 et seq., applied to unseated lands and repealed the Act of March 13, 1815, and that therefore the Act of May 9, 1889, P. L. 141, §1, 72 PS §6113, which amended section three of the Act of 1885 reduced the period of redemption of unseated lands purchased by the commissioners to two years. This case was cited with apparent approval in *Sugden v. Rothschild*, 304 Pa. 365, 155 A 864, which decided that a county treasurer was without authority to sell property for delinquent city taxes assessed against it. The continued vitality of parts, at least of the Act of 1815 has been recognized, since *Brew v. Sharer*, supra, in *Long v. Phillips*, 241 Pa. 246, 88 A. 437; *Ellis v. Houseknecht*, 57 Pa. Superior Ct. 55; *Ryan v. Bruhin*, 88 Pa. Superior Ct. 61; *O'Hay v. Tormey*, 98 Pa. Superior Ct. 237; *Carns v. Matthews*, 114 Pa. Superior Ct. 528, 174 A. 840; and *Andrews Land Corp's. Appeal*,

149 Pa. Superior Ct. 212, 27 A. 2d 700. The legislature also has recently recognized the existence of the Act of 1815 by amending it by the Act of April 13, 1933, P. L. 34, §1, 72 PS §6043, and by the Act of July 12, 1935, P. L. 663, §1, 72 PS §§6091, 6093. The sweeping language used in *Brew v. Sharer,* supra, was not necessary to the decision of that case, as the only question raised on the appeal related to the right of redemption, and section nine of the Act of 1815, pertaining to the form and method of acknowledgment of treasurer's deeds, was neither involved nor discussed. The case, while correct on its facts, should be limited to them, especially since the repealing clause of the Act of 1885 does not specifically mention the Act of 1815, and further because there is nothing inconsistent between the Act of 1885, which mentions treasurers' deeds to commissioners in sections one and three without designating the form they are to assume, and section nine of the Act of 1815. It follows, therefore, that the acknowledgment of a treasurer's tax deed conveying unseated lands to the county commissioners may still be taken before a justice of the peace, as the treasurer's authority so to do has never been recalled. See Act of May 29, 1931, P. L. 280, §14, as amended by Act of March 24, 1933, P. L. 18, §1, 72 PS §5971n, which requires deeds of seated land purchased by commissioners to be acknowledged in open court by the county treasurer.

IV. When the Irvin heirs conveyed to E. V. Babcock in 1898 excepting and reserving all the coal and fire clay under the seventeen tracts, the land was horizontally divided into two separate estates in fee simple, the grantee acquiring the ownership of the surface and the grantors retaining title to the substrata containing the minerals in place. *Powell v. Lantzy,* 173 Pa. 543, 34 A. 450; *Huss v. Jacobs,* 210 Pa. 145, 59 A. 991. The reserved mining rights imposed upon

the surface an easement or servitude appurtenant to the dominant mineral estate which remained in the grantors after the conveyance. *Big Mountain Improvement Co.'s Appeal,* 54 Pa. 361; *Webber v. Vogel,* 159 Pa. 235, 28 A. 226. These rights, as appurtenances, passed to defendants by the tax sale. *Richmond v. Bennett,* 205 Pa. 470, 55 A. 17; *United Nat. Gas Co. v. James Bros. L. Co.,* 325 Pa. 469, 191 A. 12.

This brings us to the salient question: Since the dominant estate has been divided and defendants own only seven of the seventeen tracts which compose it, what are their rights in the easement which covers the seventeen tracts? "An appurtenant easement exists for the benefit of the dominant tenement as an entirety, and not solely for any particular part thereof. The law will not presume that either party at the time of the grant of the easement was ignorant that the grantee had a right to alien a part of his lands, or that it was the intention, unless clearly expressed, that by such alienation the easement should be extinguished. Accordingly, if the dominant estate is divided, the right is not destroyed. The owner or assignee of any portion of that estate may claim the easement so far as it is applicable to his part of the property, provided the easement can be enjoyed as to the separate parcels without any additional burden upon the servient tenement": 17 Am. Jur., Easements, §126. 28 C. J. S., Easements, §65(b); 1 Thompson on Real Property (Perm. Ed.) §340; 3 Tiffany, Real Property, (3rd Ed.) §809; *Watson v. Bioren,* 1 S. & R. 227; *Ehret v. Gunn,* 166 Pa. 384, 31 A. 200; *Seidler v. Waln,* 266 Pa. 361, 109 A. 643. The mining rights were framed in the broadest possible language, imposing upon each of the seventeen tracts the servitudes described, and it nowhere appears from the reservation that a division of the mineral estate was intended to extinguish the easement or to restrict its operation to

the portions of the surface which cover coal in the several subdivisions. The rights exercised by defendants are but a fraction of those originally contemplated, and impose a burden upon the servient tenement to a far lesser degree than that to which the surface might properly have been subjected had substantial veins of coal been found under all the tracts and had the deposits been exploited with diligence.

Adoption of plaintiff's position would defeat the manifest intention of its predecessor's grantors and, so far as defendants are concerned, would completely destroy the reservation of mining rights. To affirm that defendants may mine coal and remove it from their lands and deny them the right to transport it across intervening lands to a public road and thence to a market would virtually reduce the valuable easement to a mere illusion. The mining rights extend "to, over, in and on *each and every*" of the seventeen tracts "for the mining" and "for, taking, storing, removing and transporting the same from the said premises; and for these purposes to build, construct and operate wagon and railroads, siding and tramways upon or under *any part* of said lands." (Italics supplied). The clear and unequivocal easement was not and could not be destroyed or constricted by the subsequent division of the dominant estate.

V. While defendants have not so far exceeded the legitimate scope of the rights acquired by them from the taxing authorities, their easements are not limitless and do not confer upon them a roving commission to subject any remote part of the surface lands to occupation at their pleasure. "Where an easement is granted in general terms without definitely fixing its location or limits, so that the land affected by the exercise of the right cannot be ascertained from an inspection of the writing, the grantee does not thereby acquire a right to use the servient estate without

limitation as to place or mode of use": *Pa. Water and Power Co. v. Reigart,* 127 Pa. Superior Ct. 600, 605, 193 A. 311. "The authorities establish the proposition that a right of way expressed in general terms is to be construed to include any *reasonable* use to which it may be put": *Bowers v. Myers,* 237 Pa. 533, 538, 85 A. 860. (Italics supplied). The uses made by defendants of plaintiff's lands should therefore be restricted to reasonable ones justifiable both as to place and mode of user by an apparent and direct relationship between the occupation of the surface and the economic prosecution of the mining and related activities essential to the orderly removal of defendants' coal and fire clay to the extent that they may be discovered. Cf *Heffley v. Lohr,* 149 Pa. Superior Ct. 586, 592, 27 A. 2d 275, where the lawful extent of easements was delineated.

Judgment affirmed.

KELLER, P. J., would reverse as respects the *erection of tipples and other buildings or structures* on any lands except the seven tracts in which appellees own mining rights.