## Clearfield Bank & Trust Co. v. Shaffer

543

*Henry Ray Pope,* for petitioners.
*William C. Kriner,* for respondents.

REILLY, *P.J.,* September 10, 1984—In 1975, Clearfield Bank and Trust Company (CBTC), as trustee of the estate of John Beyer, deceased, conveyed to David B. Shaffer and Gloria A. Shaffer the surface rights in a certain tract of land situated in Bigler Township, Clearfield County, Pa., containing 441.5 acres. The mineral reservation contained in that deed is as follows:

544

"Also excepting and reserving the oil, gas, coal, fireclay and other minerals with the right to open the surface and remove the same by drilling, pumping, deep mining, strip mining, auger mining or other generally used commercial method without liability for damages to the surface and improvements thereon or the water thereon, therein or thereunder."

GRC Coal Company (GRC) is the lessee of the mineral rights pertaining to the said tract by virtue of a lease agreement from CBTC dated October 15, 1979, and as assignee of a prior lease between CBTC and C.E. Powell and Annie Powell entered into February 6, 1960. Respondents have refused to consent to the entry of GRC onto their surface and at one point ordered a drilling crew, working for GRC, to leave the property.

This matter comes before the court on a petition by CBTC and GRC for a declaratory judgment to interpret the deed and determine whether or not GRC has the right to strip mine the surface described therein for the removal of coal without the consent of respondents.

This court assumes and exercises jurisdiction of this declaratory judgment proceeding pursuant to 42 Pa.C.S. §7532 and §7533. It is noted that, contrary to respondents' contentions, it is within the authority and power of this court to make the determination prayed for in this petition. While the Surface Mining Conservation and Reclamation Act does provide that "all surface mining operations shall be under the exclusive jurisdiction of the department . . .," 52 P.S. §1396.4b(a), a question of construction of a deed and a declaration of rights, status or other legal relations existing under such deed does not fall within the definition of "surface mining operations" and is clearly within the powers

of this court. It is further noted that this opinion addresses an interpretation of the deed in question and rights granted thereunder but is not an attempt to define the requirements of the Surface Mining Conservation and Reclamation Act, Act of November 30, 1971, P.L. 554, as amended, 52 P.S. §1396.1 et seq.

When CBTC conveyed to respondents in 1975 excepting and reserving the oil, gas, coal, fireclay and other minerals under the acreage described in the deed, the land was horizontally designated as separate estates in fee simple; respondents, as grantees, acquired the ownership of the surface and the grantors retained title to the substrata containing the minerals in place. The reserved mining rights imposed upon the surface an easement or servitude appurtenant to the dominant mineral estate which remained in the grantors after the conveyance. Babcock Lumber Co. v. Faust, 156 Pa. Super. 19, 28-29, 39 A.2d 298, 303 (1944). The mining rights reserved in the deed were stated in broad and explicit language. The right to open the surface and remove the reserved substances by drilling, pumping, deep mining, strip mining, auger mining or other generally used commercial method was reserved by CBTC and was thus imposed upon the surface grant.

It is firmly established in this Commonwealth that, where there is a severance of the mineral rights from the title to the surface, the owner of such rights is obligated to support the surface estate. The owner of the surface may, however, through the deed or by other means of waiver, relinquish the right, either expressly or by necessary implication. Householder v. Quemahoning Coal Co., 272 Pa. 78, 80, 116 Atl. 40, 40 (1922); see also Commonwealth v. Fisher, 364 Pa. 422, 428-429, 72 A.2d

568, 571 (1950). Where the right to surface support is not in effect, the owner of the minerals may recover all the minerals without regard for damage to the surface. It is apparent from the language of the deed, that the intention of the grantor in conveying the surface to respondents was to be able to have the entire body of their coal mined and removed so that they could profit from it, and that this was to be done without regard to the effect of the mining operations upon the surface. The deed specifically provides that strip mining may be used on the land "without liability for damages to the surface and improvements thereon or the water thereon, therein or thereunder." To borrow from the language of the Supreme Court in interpreting a similar clause in a coal lease, the surface rights reserved to the grantor are unlimited and substantially confer authority upon the grantor to use the surface to the exclusion of its owners. The rights of the grantor to the surface could scarcely be greater if the surface owner had granted to it the surface fee to those areas being mined, during the continuance of the mining operations. Miles v. Pennsylvania Coal Co., 217 Pa. 449, 454, 66 Atl. 764 (1907). It is difficult to imagine a more complete right to the use of the surface than the right to utilize the strip mining process thereon, as has been reserved in this deed. These reservations are clearly expressed and the deed speaks for itself. The intention of the grantor, CBTC, should have been very clear to respondents and their counsel at closing, as the deed obviously reveals that the manifest purpose on the part of the grantors was to recover the entire mineral estate. Furthermore, it cannot well be questioned that the right to investigate or explore for coal by geophysical or other methods in an incident to ownership of the mineral estate and, by clear implication, is part of the reser-

vation of mining rights.

The rights of the parties are fixed and determined by the reservations in this deed. In that respondents have seen fit to take the risk of acquiring the surface rights to this property subject to the reservations contained in the deed they accepted, this court cannot give to them greater rights than they purchased. Obviously, respondents, when they purchased this land, knew or should have known of the exceptions or reservations of coal mining rights in the deed and that those factors were considered by CBTC in arriving at the purchase price. To contend that respondents must consent to the entry of CBTC's lessee onto the surface for the purpose of exercising the rights reserved to CBTC is to give respondents a veto power over the rights held by CBTC under the deed and in effect renders those reservations meaningless. Nothing present in the deed or offered by respondents successfully contradicts this interpretation.

Accordingly, the court enters the following

### DECREE

Now, this September 10, 1984, it is hereby decreed that under this court's interpretation of the deed in question respondents have no right to interfere with the rights of petitioners to extract the coal from the subject property by the strip mining method.