## Gunson *versus* Healy.

A., being the owner of a tract of land, conveyed a portion thereof to B., granting also to the said B. the free use and privilege of a road through the remaining part of said tract. *Held,* that the right of way granted as aforesaid was appendant or annexed to the land conveyed, and that it might be used and enjoyed by all those owning, or lawfully occupying said tract, for any purpose to which it might from time to time be legitimately applied.

February 28th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Berks county :* Of January Term 1881, No. 185.

Trespass vi et armis, by James Healy against John Gunson and Joseph Ryan et al. The act complained of was the going of the defendants upon a strip of plaintiff's land used as a road and there attempting to cut and tear down a fence which plaintiff had erected across said road. Plea, not guilty.

On the trial, before Hagenman, P. J., the following facts appeared :—In 1829 Daniel Hunter, being the owner of a tract land fronting on the canal of the Schuylkill Navigation Company, granted a portion thereof, fronting on said canal, to Frederick Linderman and his heirs. This deed contained the following clause :

" And the said Daniel Hunter doth hereby further promise, grant and confirm unto the said Frederick Linderman, and to his heirs and assigns, the free use and privilege of a road one perch and a half wide in the clear, between the two fences, and to lead of (off) from the Hopewell road between the two first hickory trees up from the canal bridge, and thence to lead straight across the said Daniel Hunter's field so as to intersect the said Frederick Linderman's land near above his spring, and the same to remain an open road forever."

The road thereafter actually used was not located as described, but by common consent was by a route more convenient to the servient tenement.

In April 1851, James Healy, having become the owner of the servient tenement, granted a portion thereof, fronting on the canal, to A. S. Bone and his heirs. This deed contained the following clause :

[Gunson *v.* Healy.]

" The said James Healy reserves a free road or passage to and from his property the same as he now has from the Hopewell road to Thomas Gunson's line along the fence, forever. The said James Healy also reserves the same road to pass and repass for the use of the property now owned by Thomas Gunson, the road to be along the fence and of sufficient width, forever ; the said James Healy agrees to leave the road open as it now is, from the Hopewell road to the line of the above described lot, forever."

On January 30th 1864, a formal agreement and indenture, substituting the road in actual use for that originally described in the deed of 1829 from Hunter to Linderman, was executed between Gunson and Healy, and duly recorded, as follows :—

" Witnesseth, that the right of way to pass south of the buildings through the property of said James Healy, formerly reserved for the use of the farm now owned and occupied by the said Thomas Gunson, is hereby (by mutual agreement of the parties) transferred north of said buildings, and is to pass over the landing of A. S. Boone, which has been reserved by said James Healy in his deed to the said A. S. Boone, for the private use of the said Thomas Gunson, his heirs and assigns forever, to pass in and out, to and from the public highway unmolested, and that the same shall remain firm and stable forever, and be recorded as such according to law. "

Both Healy and Gunson built wharves or landing-places on the canal frontage of their respective tracts, for landing coal, lime, etc.  Healy, who engaged in the business of selling coal did not object to the use of the road by Gunson for any purpose, but he did object to its use by other parties, under permission from Gunson.  In 1878 Gunson gave permission to one Kelso to land lime at his wharf, and to haul it away along the road in question.  Kelso employed the defendant Ryan to do the hauling, and when the latter went with his team to get the lime, he found the road on Healy's land obstructed by a fence placed across it.  He thereupon proceeded to chop it down with an axe.  Healy resisted, when John Gunson and the other defendants, members of his family, came to Ryan's assistance, but, Healy still resisting, they failed to remove the fence, and Ryan returned without effecting a passage to Gunson's property.

Healy thereupon brought this action of trespass against Ryan and the Gunsons.

The defendants presented, inter alia, the following points :—

2. That the right of way in dispute is appurtenant to the land of Thomas Gunson, and he and all persons using his land with his permission, have a right to pass and repass to and from said premises over and upon said right of way, and, therefore, the verdict must be for the defendants. *Answer.*  This road is

[Gunson *v.* Healy.]

for the use of Thomas Gunson and his property. It is not necessary, for the purposes of this case, as we regard it, to say that if Gunson had leased this property and set up a wharf on his property, and rented it away, that the parties so leasing the Gunson property or wharf, would have a right to pass over this way. We say to the jury, that whilst Gunson has the right to pass and repass over this road unmolested, he had no right to permit Mr. Kelso to land his lime upon that wharf. The mere permission to land lime on that wharf, does not, without renting, or, without leasing, give the right to use this road for the purpose of hauling that lime away. This covers the proposition, which is submitted upon the part of the defendants, and it is answered in the negative with the exception of the qualification which the court has given to it.

3. That the plaintiff had no right to put a fence or bars across the right of way, and the defendants were justified in removing the obstruction, and in doing so were not guilty of trespass. *Answer.* Healy has no right to set up bars or any obstruction in this road so as to prevent Thomas Gunson from using that road for the uses of his property. We have said that the permission which Gunson has given to Kelso—the mere naked permission, without remuneration or without a lease of that wharf to land his lime—gave Kelso no right to pass over this road, and Healy setting up a bar to obstruct or prevent Kelso, or his man Ryan, from using that road, so far as it only interfered to prevent Kelso from using that road, he (Healy) was justified in putting up these bars. If it was only for that purpose, we say to you, he was justified, but if he interfered with Thomas Gunson, he was not justified, and would not have any right to prevent Gunson from using that road. . . . . . Ryan came with his team, and coming with it, it is for the jury to say whether John Gunson, Matthew Gunson and Mary Gunson were there for the purpose of supporting Ryan in driving over this road. If they were there for that purpose only, then they stand in no better light than Ryan does himself; and as Ryan had no right to haul over that road, these persons were equally guilty with him, if it was for the purpose of maintaining and supporting him in his efforts to drive over that road.

4. That under the evidence in this case, the action of trespass cannot be sustained. The remedy for any improper use of the way, if there was any, was case and not trespass. *Answer.* For the purposes of this case, we say to you, that if you find that Ryan was there determined to go through that road, and the Gunsons were there supporting and maintaining his right to go through it, and in their support cut down, or in any way did injury to the property of Healy by cutting into

[Gunson v. Healy.]

those posts, they were all guilty of a trespass, and in this case there may be a recovery.

5. That under the evidence in this case the verdict must be for the defendants. *Refused.*·

Verdict for plaintiff (for nominal damages), and judgment thereon. The defendants took this writ of error, assigning for error the answers to their points, as above.

*Jeff. Snyder* and *Geo. F. Baer*, for the plaintiffs in error.— Where there is an express grant of a private unrestricted right of way to a particular place, the grant is not to.be restricted to access to the land for purposes for which access would be required at the time of the grant. The fact that the owner thereof has had occasion for a long series of years to use it only for that one purpose does not restrict his right to use it subsequently for other purposes : Bombaugh *v.* Miller, 1 Norris 209 ; Hall *v.* McCaughey, 1 P. F. S. 43 ; Holt *v.* Sargeant, 15 Gray 97 ; Hayford *v.* Spokesfield, 100 Mass. 491 ; Bartlett *v.* Prescott, 41 N. H. 493 ; Washburn on Easements 216 ; Finch *v.* Great Western R. R., 28 Weekly Rep. 229 ; Newcomen *v.* Coulson, 5 Chan. Div. 133 ; United Land Co. *v.* Great Eastern R. R., 17 Eq. Cases 158. See also Goddard's Law of Easements 315.

A grant is to be construed most strongly against the grantor, if there is any doubt : Klaer *v.* Ridgway, 5 Norris 529. The grant here was of a road, not a mere right of way. Gunson could not only use the road for his individual access to his wharf, but could grant or license others to use it in connection with the use of any part of his property, for any purpose, and the question whether he received a consideration or not for such user was. immaterial.

*A. G. Green* and *James N. Ermentrout (Daniel Ermentrout* with them), for the defendant in error.—At the time of the reservation of the way, and for years afterwards, the Gunson tract was used as a farm. The use of a way must be according to the grant or the occasion of it, and not exceed it : Kirkham *v.* Sharp, 1 Whart. 333. The intention of the parties was expressed in the agreement of 1864 that the way was " for the private use of the said Thomas Gunson, his heirs and assigns." To hold that he can indefinitely license others to use it for the purposes of landing facilities on his land, is to unjustly increase the burden upon the servient tenement, in a manner never contemplated by the parties. A right of way for farm purposes does not include the right to transport coal or lime from a quarry : Washburn on Easements *187, § 6 ; Cowling · *v.* Higginson, 4 Mees. & W. 245 ; Jackson *v.* Stacey, Holt's N.

[Gunson *v.* Healy.]

P. 453; Jamison *v.* McCredy, 5 W. & S. 140; Cox *v.* Freedley, 9 Casey 124; Connery *v.* Brooke, 23 P. F. S. 83.

Mr. Justice Sterrett delivered the opinion of the Court, October 2d 1882.

The subject of complaint in the first specification is the refusal of the court to charge, as requested in defendant's second point: "That the right of way in dispute is appurtenant to the land of Thomas Gunson, and he and all persons, using his land with his permission, have a right to pass and repass to and from said premises over and upon said right of way."

This proposition fairly presents the controlling question in the case; and, in view of the uncontradicted evidence on which it is based, we are clearly of opinion it should have been affirmed. The right of way is undoubtedly appurtenant to Gunson's land; its use is not in any manner qualified or restricted, and hence it follows that he and those who, by his permission, use the land for any legitimate purpose have a right to pass and repass over the road.

The two adjoining tracts, now owned respectively by Healy, the defendant in error, and Gunson, formerly belonged to Daniel Hunter, who in 1829 sold and conveyed the Gunson tract, and in connection therewith granted and confirmed unto his vendee, "his heirs and assigns the free use and privilege of a road one perch and a half wide in the clear," from the Hopewell road across his own land to that of his vendee, "to remain an open road forever." The road as located in the grant was not used, but by common consent another more convenient to the servient tenement was substituted and thenceforth enjoyed by the owners and occupiers of the dominant tenement. The change of location thus assented to was long afterwards recognized and ratified by a written agreement between Gunson and Healy, executed in 1864. The learned judge substantially charged, as requested by defendants, that the agreement of 1864, simply changed the location of the road granted by Hunter, and that "the extent of the right and everything pertaining to it (except location) is to be gathered from the terms of the grant in the Hunter deed." Recurring to it we find the grant was the free use and privilege of an open road forever. If there was any doubt as to the nature or extent of the grant the well-settled rule would require it to be taken most strongly against the grantor; but there is no ambiguity about it. On the contrary, it is clear and explicit, and instead of restricting or in any way limiting the use, it is declared to be free and an open road forever. It needs no citation of authority to show that such a right of way, appendant or annexed to an estate, may be used and enjoyed by those who own or lawfully occupy any part of the dominant tenement for

[Roland v. Miller.]

any purpose to which it may from time to time be legitimately applied. Only those who may be properly regarded as trespassers on the dominant tenement can be excluded.

It follows from what has been said, that the second, fourth, fifth and sixth assignments are also sustained.

Judgment reversed and a venire facias de novo awarded.