389 A.2d 1096

Charles E. LEASE and Jack E. Lease

v.

John H. DOLL, Sr. and Florence H. Doll.

Appeal of Charles E. LEASE.

Superior Court of Pennsylvania.

Argued March 14, 1978.

Decided July 12, 1978.

Kenneth A. Wise, York, for appellants.
Jeffrey C. Bortner, York, for appellees.

Before JACOBS, President Judge, and HOFFMAN, CER-CONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in restricting the use of their easement to a footpath. We affirm the decree of the court en banc.

In 1952, the common grantor of both appellants' and appellees' land conveyed appellants' land to appellants' predecessor in title. Because the parcel conveyed was completely landlocked, the deed expressly granted appellant an easement over the land retained by the grantor. The easement provides the parcel's only access to a public road and is created by the following language: "UNDER AND SUBJECT to the following restriction: that a right of way is granted to the grantees and their heirs and assigns leading from the southeast corner southward on the West side of the stream of water from the said corner to the public road. That the grantees and their successors may at all times have the right to use same as an outlet from the premises hereby conveyed to the public road." The right of way follows the stream which marks its eastern boundary and extends from the public road to appellants' property.[1] In 1953, the common grantor sold his land, the servient tenement, and, in 1956, the original owner of the dominant tenement sold her interest in the property. The original owner of appellants' tract did not own a car. Appellants herein purchased their tract in 1974, appellees in 1971. Prior to 1952, and at the time of the creation of the easement, residents of the area used the western bank of the subject stream as a footpath to travel between two public roads. With infrequent exception, since the 1952 deed severed title, access to appellants' parcel has been by foot. When vehicles were used to gain access to appellant land, appellants' predecessors in title asked and received permission to drive to the tract. More-

---

1. The Chancellor made no finding as to the length of the way. The testimony was conflicting, some witnesses said it was 70 feet, another witness said 100 feet, and appellant estimated 150 feet.

over, due to the generally soft and damp ground next to the stream, the vehicles were driven slightly west of the stream. On two occasions cars that drove over the right of way became mired in the soft ground and had to be pulled out. Two persons testified that between 1953–56 and between 1965–71, they farmed the servient tenement and, in planting crops, they plowed so that only a pathway wide enough for foot traffic existed along the stream bank.

In 1965 or 1967, the prior owner of appellees' land created a small parking area for his own cars along the public road, west of the right of way. This resulted in an embankment defining the eastern edge of the parking lot and limiting the right of way to an area of 12–14 feet between the embankment and the edge of the stream. At certain times of year the owner of the servient estate piled brush on the embankment, again limiting the usable space to a footpath. The embankment and brush were in existence and visible when both parties hereto acquired their respective tracts.

When appellants purchased their land in 1974, they began to improve the right of way by dumping stones to permit vehicle access to their land. Appellants dumped stone in an area just west of the stream bank and to a width sufficient for cars to pass over. Appellees stopped the addition by stone by constructing a fence on their property which effectively limited the easement to a footpath.

On June 25, 1974, appellants filed a complaint in equity seeking to enjoin appellees from interfering with access to the right of way. On July 16, 1974, appellees filed an answer and counterclaim.[2] Following the denial of preliminary motions, the court held a hearing on June 30, 1975, and issued an adjudication and decree nisi on July 3, 1975. This

---

2. In their counterclaim, appellees averred that appellants had trespassed on their property by dumping stone beyond the three feet width of the easement. Further, appellees alleged that the size and location of appellants' land prevented construction of sewage facilities in compliance with the Pa. Sewage Facilities Act; 35 P.S. 750.1 et seq.

Appellees requested an injunction to prevent appellants from trespassing on their land and to prohibit appellants from occupying their premises in violation of the Sewage Facilities Act.

decree provided that the easement extended from the center line of the stream to the nearest edge of the embankment on appellees' property. If the width was sufficient, appellants could improve the right of way for vehicles.[3] Pursuant to appellees' petition for a rehearing, the court opened the first decree nisi and conducted a second hearing on December 18, 1975. On February 13, 1976, the court issued a second adjudication and decree nisi which declared that the easement is of sufficient width to provide for reasonable and convenient travel by foot, but not of sufficient width to provide for access by motor vehicle.[4] On April 7, 1977, the court en banc, dismissed appellants' exceptions to the decree nisi and entered a final decree. This appeal followed.

Appellants contend that the lower court erred in restricting the use of their easement to pedestrian traffic. More particularly, they argue that the language of the grant and the nature of the benefitted land combine to show that the parties to the original grant did not intend to restrict the way to a footpath. In construing the express grant of an easement our Supreme Court has stated the applicable standard:

"The same rules of construction that apply to contracts are applicable in the construction of easement grants. *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 54 A.2d 35 (1947). When there is doubt concerning the meaning of a contract we have said: 'In the construction of any contract, certain principles must guide us: (a) if there is any doubt as to the meaning of a term of a contract, such term should "receive a reasonable construction *and one that will accord with the intention of the parties*; and, *in order to ascertain their*

---

**3.** In its first opinion, the lower court found construction of the embankment by appellees' predecessor in title to be the decisive factor. The court concluded that the prior owner *intended* to establish the width of the easement by making the embankment.

**4.** After hearing the testimony of Laughman, the prior owner who built the embankment, the lower court issued a second opinion. The court found that Laughman did not intend to define the width of the way when he built his parking area. Consequently, the court had to reconsider all of the evidence.

*intention, the court must look at the circumstances under which the [contract] was made"* . . . .; (b) in construing a contract we seek to ascertain what the parties intended and, in so doing, *we consider the circumstances, the situation of the parties, the objects they have in mind and the nature of the subject matter of the contract* : . . . .' *United Refining Co. v. Jenkins,* 410 Pa. 126, 137–38, 189 A.2d 574 (1963). (Emphasis supplied)." *Sigal v. Mfrs. Light and Heat Co.,* 450 Pa. 228, 234–35, 299 A.2d 646, 649 (1973). In *Merrill v. Mfrs. Light and Heat Co.,* 409 Pa. 68, 73, 185 A.2d 573, 575 (1962), the Court elaborated further:

"To ascertain the nature of the easement created by an express grant we determine the intention of the parties ascertained from the language of the instrument. Such intention is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made. Ambiguous words are to be construed in favor of the grantee." (footnote omitted). *See also Garan v. Bender,* 357 Pa. 487, 55 A.2d 353 (1947). Thus, in the first instance we look to the language of the grant of the right of way. If an ambiguity exists, we then consider all the attending circumstances existing at the time of the agreement so as to determine the purpose of the parties.

■ In the case at bar, the language of the deed does not specify the width of the right of way; it only describes the way in general terms as running southward on the west side of the stream. The deed states that the way may be used as an outlet from the premises to the public road but it does not specify the manner of use. The grant of the easement is ambiguous with respect to both its width and use and requires that we look to all of the attending circumstances known to the parties at the time the grant was made. Neither of the original parties to the deed testified; however, people who lived in the area in 1952, and who were

familiar with the area, did testify. They stated that prior to and at the time of the grant, the local residents had used the stream bank as a pedestrian way from one public road to another. The original owner of appellants' tract did not own a car. When the deed created the way in 1952, motor vehicles were in general use and if the parties intended to grant an easement for use by cars, they could easily have done so. Moreover, the witnesses stated that the stream bank was too soft and wet to support vehicular traffic. In fact, vehicles that did use the way became mired in the soft ground and had to be towed out. We find that the circumstances and facts existing at the time of the grant of the easement do not support a finding that the parties intended to grant an easement for use by cars.

Appellants argue that if a right of way is granted in general terms without limitation as to width, a history of a more limited use of the right of way does not prohibit reasonable expansion of the use of the way, or reasonable expansion of the width. It is true that "the fact that the person entitled to such [right of] way has used it for one purpose only for a long series of years does not restrict its use to that purpose only. The grant being in general terms, it must be construed to include any reasonable use to which the land may be devoted." *Bowers v. Myers*, 237 Pa. 533, 538–39, 85 A. 860 (1912); *Taylor v. Heffner*, 359 Pa. 157, 58 A.2d 450 (1948); *Hammond v. Hammond*, 258 Pa. 51, 101 A. 855 (1917); *Benner v. Junker*, 190 Pa. 423, 43 A. 72 (1899). However, these cases involve a change in use of a specifically delineated right of way; they do not involve a change in the size or location of an easement. A recent Supreme Court case is illustrative. In *Piper v. Mowris*, 466 Pa. 89, 351 A.2d 635 (1976), the owner of the dominant tenement, Mowris, had an easement expressly granted to him by deed over a "certain private road." The location and size of the road was specific and not in issue. The owners of the servient estate contended, *inter alia*, that Mowris could only

use the way for pedestrian traffic except in exigent circumstances. The Supreme Court stated "an easement may be used for all ordinary purposes if the manner in which it is used is reasonable." 466 at 101, 351 A.2d at 641. The Court held that to permit Mowris to use vehicles over the right of way was reasonable so long as he *did not change the width or location of the right of way.* Thus, in cases involving a change in use of a specifically located easement, courts must look to what is reasonably necessary for the use of the easement, including modern developments. *Piper,* supra.

■ In the instant case, appellant wishes to expand the width of the way to accommodate a new use. The grantor did not express size limits on the right of way in the deed. "[I]t is not necessary [in creating an easement] to designate with definiteness the part of the land to which the right attaches." *Ozehoski v. Scranton Water Co.,* 157 Pa.Super. 437, 43 A.2d 601 (1945); *Kraut's Appeal,* 71 Pa. 64 (1872). However, when "a right of way is expressly granted and its precise location and limits are not fixed or defined by the deed, it is competent for the parties to define the location and determine the limits of the right of way by subsequent agreement, use and acquiescence." *Taylor v. Heffner,* supra, 359 Pa. at 161–162, 58 A.2d at 453; *Kraut's Appeal,* supra.

In *Pa. Water and Power Co. v. Reigart,* 127 Pa.Super. 600, 193 A. 311 (1937), defendant, in 1923, expressly granted to plaintiff in writing, a right of way to construct, maintain and operate lines for the transmission of electric current together with all necessary towers, poles, wires and cables. A blueprint showed in a general way the center line of the proposed easement but did not specify exactly its location. Plaintiff entered on defendant's land and installed power lines. In 1935, plaintiff began to install lightning arrestors which extended beyond the width of the original wires. The plaintiff sued for an injunction to prevent defendant's interference with his new installation. Our Court stated:

"Where an easement is granted in general terms without definitely fixing its location or limits, so that the land affected by the exercise of the right cannot be ascertained from an inspection of the writing, the grantee does not thereby acquire a right to use the servient estate without limitation as to place or mode of use. 'When the right granted has been once exercised in a fixed and definite course, with the full acquiescence and consent of both parties it cannot be changed at the pleasure of the grantee'" *Reigart*, supra at 605, 193 A. at 314. Consequently, we held that the extent and mode of use of the right of way were fixed by the acts of the parties in 1923, and their similar use for the next twelve years. Therefore, plaintiff had no right to take more of defendant's land beyond the limits of the established right of way so as to impose an additional burden on the land.

■ *Reigart, Ozehoski*, and *Kraut*, supra, control the instant case. The grant did not fix the exact dimensions of the way; therefore, its limits are defined by subsequent agreement, use, and acquiescence of the parties. Once the dimensions of the way are established, no expansion of size will be permitted at the "pleasure of the grantee."

Appellant contends that the lower court erred in finding that prior use established the width of the way as sufficient for a footpath only. " '[O]n appeal we are bound by the chancellor's findings of fact particularly if approved by the court en banc, to the same extent as we would be bound by the factual determinations of a jury. The test in either case is whether the findings are adequately supported by the record. The chancellor's findings are entitled to particular weight in a case in which the credibility of the witnesses must be carefully evaluated, because he has had opportunity to hear them and to observe their demeanor on the stand.' " *Kimball v. Barr Township*, 249 Pa.Super. 420, 378 A.2d 366, 369 (1977); *Piper v. Mowris*, supra; *Stauffer v. Stauffer*, 465 Pa. 558, 351 A.2d 236 (1976).

Instantly, the local residents testified that the way has always been used exclusively as a footpath of three feet in width along the stream bank. The original owner of the dominant tenement did not own a car and, if a subsequent owner desired to use a car to gain access to the property, he asked permission of the owner of the servient tenement before doing so. Vehicular access was rare and confined to hauling exceptionally large loads and heavy items. Prior owners of appellees' land plowed their land to within three feet of the stream bank. The evidence strongly supports the chancellor's findings that prior use established the width of the way as sufficient for pedestrian travel only. Consequently, we affirm the decree of the lower court.

Decree affirmed.

SPAETH, J., files a dissenting opinion in which VAN der VOORT, J., joins.

SPAETH, Judge, dissenting:

The question we must focus on is, What was the intention of the parties who created the right of way, in 1952? We cannot answer this question by considering, as has the majority, and as did the lower court, the actions of those who came after the parties. If the parties who created the right of way had themselves acted, we could ascertain their intention by considering those actions, but in fact they did not act; shortly after creating the right of way, each of them sold his respective property. In these circumstances the case must be decided—the parties' intention must be defined—mostly by reference to general legal principles. I find two such principles controlling.

First: Where, as here, the width of the right of way is not fixed by the grant but is stated in general terms, the right of way

".   .   . must be construed to include any reasonable use to which the land may be devoted.".   .   .   .

*Bowers v. Myers*, 237 Pa. 533, at 539, 85 A. 860, at 861 (1912) (quoting Jones on Easements (1898) § 375) (citations omitted).

Second: In deciding what "any reasonable use" means we should be liberal, for the law favors the maximum use of land. *See Soltis v. Miller*, 444 Pa. 357, 282 A.2d 369 (1971) (error for chancellor to limit right of way to domestic and farm use); *Garan v. Bender*, 357 Pa. 487, 55 A.2d 353 (1947) (automobiles permitted where only pedestrians had walked); *Hammond v. Hammond*, 258 Pa. 51, 101 A. 855 (1917) (bridge permitted where only ford had been).

Here, except for the right of way the property is landlocked. When the right of way was created, in 1952, the automobile was in common use. To limit the right of way to pedestrians will—must—limit the possible use of the land. All of this must have been known to the parties who created the right of way, that is to say, they must have contemplated that some day the owner of the right of way would probably wish to drive an automobile over it. Applying the two legal principles stated above, therefore, I should hold that in the absence of any contrary evidence regarding the parties' intention, the parties should be held to have intended the right of way to include use by automobiles.

One further comment should perhaps be made. I agree with the majority, and with the lower court, that those who came *after* the parties who created the right of way did not intend the right of way to include use by automobiles; I think their conduct shows this to be so. However, once the right of way was created, its extent did not diminish simply because of non-use and the passage of time. *Hatcher v. Chesner*, 422 Pa. 138, 221 A.2d 305 (1966); *Eagen v. Nagle*, 378 Pa. 206, 106 A.2d 222 (1954); *Mitchell v. Bovard*, 279 Pa. 50, 123 A. 588 (1924); *Crowe v. O'Hagan*, 176 Pa.Super. 271, 106 A.2d 872 (1954).

I should therefore reverse the lower court, and remand for the entry of a decree consistent with this opinion.

VAN der VOORT, J., joins in this dissenting opinion.