MINORA, J.,
I. INTRODUCTION
This case stems from a property dispute amongst neighbors. Samuel DeSimone and Merrilee Ann DeSimone (hereinafter “plaintiffs”) and George H. Kessler and Anne M. Kessler (hereinafter “defendants”) executed a right of way agreement (hereinafter “the agreement”) to which defendants granted to the plaintiffs, their heirs, successors and assigns the right and privilege to utilize the right of way up to plaintiffs’ current gravel driveway for access to plaintiffs’ home located on their property.
In their complaint filed April 5, 2012, plaintiffs allege that they acquired an easement to and from the right of way described in the agreement. See plaintiffs’ complaint, at 6. Plaintiffs argue that the defendants’ limitation of plaintiffs’ access to the right of way prevents plaintiffs from receiving fuel deliveries and easy access to their property over the gravel driveway, which has been the common practice since 2001. Id, at 5.
Plaintiffs’ complaint makes two (2) claims against the defendants, one for an action to quiet title, and the other for trespass. According to the plaintiffs, defendants are now attempting to impose a further limitation for the use of the right of way. Plaintiffs argue that the agreement should be given the full force and effect of the law, and plaintiffs should be allowed to exercise all rights to utilize the right of way to obtain access to and from their gravel driveway. Id, at 5-6. Lastly, plaintiffs argue that as a result *528 of the activities by defendants, a portion of plaintiffs’ land has been damaged and they have been deprived of the use and enjoyment of their land. Id, at 8.
Defendants filed their answer to plaintiffs’ complaint on June 19, 2012 and asserted two (2) counterclaims for ejectment and trespass. In their counterclaims, defendants allege that plaintiffs’ construction of a sand mound for sewage treatment encroached upon the defendants’ land and deprived the defendants of use and enjoyment of their land. See answer of defendants and counterclaim, at 3-4. Defendants further allege that the plaintiffs sand mound is “constructed in a [manner] which causes an unnatural drainage of water from the plaintiffs’ land onto the defendants’ land resulting in the accumulation of water ... and additional loss of use of the defendants’ land preventing them from mowing and maintaining the land.” Id., at 4.
On December 5, 2013, the Honorable Judge Thomas Munley entered an order appointing Thomas Helbig, Esquire as special trial master to conduct a mediation conference on the matter. Following an unsuccessful mediation, the case proceeded to trial de novo.
The undersigned presided over a two-day de novo non-jury trial that commenced on January 27, 2015. The record was left open to allow the parties to submit proposed findings of fact and conclusions of law. All parties submitted a joint statement of undisputed facts on March 10, 2015. Plaintiffs submitted their requested findings of fact and conclusions of law on March 13,2015. Defendants submitted their version of the same on the same day. We now consider the matter ripe for disposition and the rendering of a non-jury opinion as per Pa.R.C.P. 1038.
*529 II. FINDINGS OF FACT
The findings of fact in this case as determined by the court are supported by the credible, probative, and relevant evidence established during the trial and accepted as true by the court:
1. The plaintiffs are both adult and competent individuals who own the property located at 102 Hidden Valley Drive, Clarks Summit, Lackawanna County, Pennsylvania, 18411.
2. The defendants are both adult and competent individuals who own the property located at 107 Hidden Valley Drive, Clarks Summit, Lackawanna County, Pennsylvania, 18411.
3. On October 26, 1989, Anthony P. DeAngelo filed the Hidden Valley Subdivision Map in the Lackawanna County Recorder of Deeds Map Book 6A at Page 1085.
4. A deed dated November 9, 1993 from Richard and Laurie Hrobuchak to Dr. Ralph DeMario was recorded in Deed Book 1453, Page 563. See Joint Statement of Undisputed Facts, at Fact 1.
5. Plaintiffs acquired title to Lot #5 of Hidden Valley Estates Newton Township, PA by virtue of a Deed filed on page 785 of Record Book 344 on November 20, 2000. Id., at Fact 2.
6. Defendants acquired title to their property from Dr. Ralph DeMario on November 30, 2004, which is filed as Instrument No. 2004-43785. Id., at Fact 3.
7. Defendants’ property abuts the plaintiffs’ property and consists of approximately 3.595 acres. Id.
8. Plaintiffs’ November 20, 2000 deed included a *530 provision that stated that the parcel was subject to a fifty (50) feet wide easement for access, ingress, egress, and regress for open space lands of Hidden Valley Estates and said easement being fifty (50) feet wide and lying adjacent to the sideline common to Lot #5 and Lot #6. See Joint Exhibit 1.
9. Plaintiffs built their home on Lot #5 in 2001 and moved in that year. N.T. 1/27/15, at 18.
10. Plaintiffs had a sand mound and drain field for sewage treatment constructed in 2001 under the supervision of Ozbert Patton, the former Sewage Enforcement Officer for Newton Township. N.T. 1/28/15, at 114.
11. Plaintiffs constructed two (2) driveways that provided access to their home. The first is a paved driveway that provides access directly from Hidden Valley Drive to the garage on the upper level of the home. The second is a gravel driveway that is reached by driving a short distance over the paved driveway in what is the 50’ x 170’ long right of way owned by defendants. N.T. 1/27/15, at 18-21.
12. Plaintiffs believed they owned the land over which the 50’ x 170’ wide easement was located. Id., at 21,24.
13. The 5 0 ’ x 170 ’ driveway was used without restriction by plaintiffs, their relatives, friends, neighbors, delivery people, workers and anybody else driving or walking to plaintiffs’ home. Id., at 21-23.
14. Plaintiffs learned that they did not own the 50’ x 170’ piece of land in 2004 when Dr. Ralph DeMario decided to sell his home to defendants. Id., at 25-27.
15. Plaintiffs decided to accommodate Dr. Ralph DeMario and convey the 50’ x 170’ piece of land to defendants by a quit claim deed subject to the fact plaintiffs *531 could continue to use the same access to and from the gravel driveway as they utilized before. Id., at 27-32; See also Joint Statement of Undisputed Facts, at Fact 4.
16. At the request of the defendants, on December 7, 2004, the parties and Dr. Ralph DeMario executed the agreement. See Joint Statement of Undisputed Facts, at Fact 5.
17. James Tressler, Esquire prepared the agreement in representation of Dr. Ralph DeMario. At the time, plaintiffs were represented by David Bianco, Esquire. Defendants were unrepresented by an attorney. N.T. 1/27/15, at 27-28; N.T. 1/28/15, at 8.
18. In the agreement, Dr. Ralph DeMario executed a deed conveying all his rights, title and interest in 102 Hidden Valley Drive, Clarks Summit, Pennsylvania, 18411 to Defendants. See Joint Exhibit 5.
19. In the agreement, the defendants also granted to the plaintiffs, their heirs, successors and assigns, as owners of Lot #5 the right and privilege to utilize the right of way up to plaintiffs current gravel driveway for access to Lot #5. Id; See also Joint Statement of Undisputed Facts, at Fact 5.
20. The agreement stated that the width of the right of way was to be no greater than the current width of plaintiffs’ driveway serving Lot #5. See Joint Exhibit 5; See also Joint Statement of Undisputed Facts, at Fact 5.
21. The agreement further stated the following:
The right of way shall, at all times, be owned by [defendants], their heirs, successors and assigns and shall be used by [plaintiffs], their heirs, successors and assigns only for access to Lot #5 as depicted on Exhibit *532 ‘A’ and as set forth above and no additional rights for use of the right of way will be given by [plaintiffs] to any third party without the prior written consent and approval of [defendants].
See Joint Exhibit 5.
22. Plaintiffs continued to use the gravel driveway just as they had for the initial four (4) years between 2004 and 2011. N.T. 1/27/15, at 32.
23. In September of 2011, defendant George Kessler excavated a ditch alongside the paved driveway in the right of way that reduced the size of the right of way. Id., at32, 111.
24. The ditch was filled with sharp, jagged rocks referred to as riprap. Id., at 111.
25. Defendant George Kessler buried a 16 ’ foot drainage pipe at the entrance of the paved driveway, which also limited plaintiffs’ access to the right of way. Id., at 43.
26. Plaintiff Sam DeSimone drove his vehicle into the ditch and the vehicle was damaged. Id., at 32-33.
27. On September 20, 2011, defendant George Kessler sent a letter to plaintiff Sam DeSimone that stated the letter would resolve and spell out exactly what the agreement allows. See Joint Statement of Undisputed Facts, at Fact 6; See also Joint Exhibit 6.
28. In the letter, defendant George Kessler further stated the following:
Paragraph 1 allows you to pass over my blacktop driveway, only as far as your driveway, and allows you to cross my land using the width of your current driveway. In other words the area you can use to cross *533 my land is no greater than the width of your existing gravel driveway which is about 15 to 20 feet, You are not allowed to use, change, alter, make beams, cut trenches, park vehicles or equipment, place cones on, or use for snow removal, any part of my land that adjoins yours. You may only cross my land to access your driveway and only your driveway at the place provided and you do not have any other use of this land. You may not cross other parts of my land to access any other parts of your land.
See Joint Exhibit 6.
29. The letter also indicated the following regarding the agreement:
Paragraph 3 states that only [plaintiffs], their heirs, successors and assigns, (the people in your will and whomever you sell your house to), may use the ‘right of way’ and [plaintiffs] cannot give that right to third parties. Anyone other than the three DeSimones who live at 102 Hidden Valley Dr, must have the written permission of Kessler to use any part of the ‘right of way’ for any reason.
[Y]ou are warned that no one including your guests, delivery people, workers and anyone else you invite to your property may cross my property at any place or use the ‘right of way’, either walking, driving or by any other means. To be clear your guests and others you invite, must not access your gravel driveway or other parts of your property using the ‘right of way’ and must access your property through a way other than my property. In addition, because I am solely responsible for the maintenance and upkeep of the driveway at my expense, there will be no delivery trucks, gas, oil, wood *534 delivery, equipment, furniture delivery or any other truck or delivery truck of any kind using the ‘right of way’ and passing over my blacktop driveway or any other part of my land.

Id.

30. Plaintiff Sam DeSimone never orally nor in writing agreed to defendant George Kessler’s September 20,2011 letter. N.T. 1/27/15, at 34.
31. Following the September 20,2011 letter, defendant George Kessler erected two (2) iron poles at the entrance to plaintiffs’ gravel driveway. Id., at 37-40.
32. The two (2) iron poles reduced the width of the access to plaintiffs’ gravel driveway and prevents delivery trucks from being able to drive into the gravel driveway from the right of way. Id., at 40-41,111.
3 3. Defendant George Kessler had surveyor pins erected over the boundary line that protrude approximately 1 ’ foot above the ground that create a hazardous condition. Id., at 37-38, 112.
34. Plaintiffs secured a field survey of their property performed by John M. Hennemuth, PLS that indicated that the mouth of the gravel driveway was reduced from 21 ’ feet in width to 15.54’ feet in width because of the two (2) iron poles placed by defendant George Kessler. Id., at 103-104,110-111; See also Joint Statement ofUndisputed Facts, at Fact 7.
35. Defendants secured two (2) survey maps of their property performed by Kevin M. Karsnak, PLS. See Joint Statement ofUndisputed Facts, at Fact 8-9.
36. Kevin M. Karsnak determined that the distance between the two (2) iron poles is 16.4’ feet and the width *535 of plaintiffs’ gravel driveway is 12’ feet. N.T. 1/28/15, at 71, 75, 96; See also Defendants’ Exhibit 2.
37. Given his extensive background and experience, We find the conclusions of surveyor Hennemuth to be most credible, probative and persuasive.
III. CONCLUSIONS OF LAW
A. Action to Quiet Title and Easements
1. The purpose of an action to quiet title is to resolve a conflict over an interest in property. Pa. R.C.P. 1061.
2. “The courts have held that an easement is an interest in land for which an action to quiet title may be brought.” National Christian Conference Center v. Schuylkill Tp, 597 A.2d 248, 312 (Pa. Cmwlth. 1991), citing Versailles Township Authority v. City of McKeesport, 90 A.2d 581 (Pa. Super. 1952).
3. “An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement.” Restatement (Third) of Property (Servitudes) § 1.2 (2000).
4. An easement may be created 1) expressly; 2) by necessity; 3) by implication; or 4) by prescription.
5. Here, we have an express easement set forth in the agreement between the parties. See Joint Exhibit 5. With respect to the construction of express easements:
It is well-established that the same rules of construction that apply to contracts are applicable in the construction of easements.... In ascertaining the scope of an easement, the intention of the parties must be advanced. ‘Such intention of the parties is determined by a fair *536 interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.’
McNaughton Properties. LP v. Barr, 981 A.2d 222, 226-227 (Pa. Super. 2009), quoting Zettlemoyer v. Transcontinental Gas Pipeline Corp., 540 Pa. 337, 344, 657 A.2d 920, 924 (1995).
6. Therefore, when the words of an agreement are unambiguous and clear, the intent of the parties is to be ascertained from the language used in the agreement. Miller v. Poole, 45 A.3d 1143, 1146 (Pa. Super. 2012).
7. “A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.” Id.
8. “Ambiguous words are to be construed in favor of the grantee.” Lease v. Doll, 389 A.2d 1096, 1098 (Pa. Super. 1978).
9. Where the language of an easement agreement is ambiguous, the grantee shall have reasonable and necessary use of the right of way within the purpose of the easement and the intentions of the original parties to the grant. McNaughton, 981 A.2d at 227.
10. “[T]he scope of an express easement must be determined in strict conformity with the intentions of the original parties as set forth in the grant of the easement.” Id.; Zettlemoyer, 540 Pa. at 346, 657 A.2d at 925.
11. A grant of an easement being in general terms “must be construed to include any reasonable use to which the land may be devoted.” Lease, 389 A.2d at 1099.
12. “An easement may be used for all ordinary purposes *537 if the manner in which it is used is reasonable.” Id.
B. EJECTMENT
13. “An action in ejectment can be a proper remedy for the recovery of land unlawfully encroached upon.” Murphy v. Frie, 32 Pa.D.&C.5th 299, 5 (C.P. Lackawanna 2013), quoting Big Bass Community Association v. Warren, 950 A.2d 1137, 1146 (Pa. Cmwlth. 2008).
14. With respect to actions in ejectment:
The plaintiffs’ burden in an action of ejectment at law is clear; they must establish the right to immediate exclusive possession. Recovery can be had only on the strength of their own title, not the weakness of defendant’s title. The crux of an ejectment action, therefore, rests with the plaintiffs’ ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of to which they are out of possession but for which they maintain paramount title.
Riverwatch Condominium Owners Ass’n v. Restoration Development Corp., 980 A.2d 674, 681-682 (Pa. Cmwlth. 2009), quoting Doman v. Brogan, 592 A.2d 104, 108 (Pa. Super. 1991).
15. “Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession.” Murphy, 32 Pa.D.&C.5th 299 at 5.
16. “To sustain an action in ejectment, the evidence must be sufficient to identify the land in dispute and establish the plaintiff’s right to possession thereof, and the burden of identifying and locating the land clearly rests upon the plaintiff.” Id.
*538 C. Trespass
17. “One who intentionally enters the property of another without the privilege to do so is chargeable with trespass.” Id.
18. “Pennsylvania has adopted the Restatement (Second) of Torts § 158 which imposes liability for trespass if the intruder enters or remains on the land of another without consent.” Id.
19. “To succeed with a trespass claim, there must be in the plaintiff either actual possession or the right to immediate possession flowing from the right of property; and she must have been deprived of it by the tortuous act of another.” Id.
IV. NATURE AND EXTENT OF EASEMENT
1. It is the conclusion of this court that the December 7, 2004 agreement creates the easement in which defendants granted to the plaintiffs the right and privilege to utilize the right of way up over defendants’ paved driveway to plaintiffs’ gravel driveway for access to plaintiffs’ home. In ascertaining the scope of the agreement, this court must determine the intention of the parties by interpreting the language with reference to the attending circumstances known to the parties at the time the agreement was made. McNaughton, 981 A.2d at 226-227.
2. Here, the language of the easement grants plaintiffs “the right and privilege to utilize the right of way up to their current gravel driveway.” See Joint Exhibit 5. The agreement further states that “[t]he right of way shall... be used by [plaintiffs], their heirs, successors and assigns only for access to Lot #5...and no additional rights for use of the right of way will be given by [plaintiffs] to any third party without the prior written consent and approval of *539 [defendants].” Id.
3. While the section of the agreement addressing the purpose of the easement is unambiguous, and therefore the intent of the parties must be ascertained from the language, we find that the grant is ambiguous and is stated in general terms. Therefore the grant must include all ordinary purposes and reasonable manners which it was and is used. Miller, 45 A.3d at 1146; Lease, 389 A.2d at 1099.
4. When the parties entered into the agreement, defendant George Kessler testified that he was aware that Dr. Ralph DeMario allowed plaintiffs to have third parties access plaintiffs’ property over the paved driveway. N.T. 1/27/15, at 138-139. Plaintiff Sam DeSimone testified that the paved driveway was used, without restriction, by plaintiffs, their relatives, friends, neighbors, delivery people, workers and anybody else visiting plaintiffs’ home. Id., at 21-23. Because defendants were aware of plaintiffs’ prior use of the right of way prior to the execution of the written agreement coupled with the plaintiffs’ ordinary and reasonable use, we legally conclude that plaintiffs are entitled to exercise all prior rights and privileges in the utilization of the right of way without the limitations attempting to be unilaterally imposed by defendants. The typical parties permitted to use the right of way include, without limitation, plaintiffs, their relatives, friends, neighbors, invitees, delivery trucks (such as septic tank services, fuel, US Postal Service and UPS), workers (such as landscapers and contractors), and any third party visiting plaintiffs’ home or property at plaintiffs’ invitation and with plaintiffs’ consent.
5. Defendants argue that paragraph three (3) of the agreement, which states “no additional rights for use of *540 the right of way will be given by [plaintiffs] to any third party without the prior written consent and approval of [defendants],” prohibits third parties from using the right of way. See Joint Exhibit 5. In order to read this clause consistent with the ambiguous granting language, we legally conclude that plaintiffs are not attempting to grant third parties any additional rights. Plaintiffs are only attempting to secure and use the right of way in the same manner exercising the same rights that they have peacefully enjoyed since 2001 when they constructed their home.
V. WIDTH OF EASEMENT
6. Since we have concluded that plaintiffs have acquired an easement to use the right of way on defendants’ property, as outlined above, We must now determine the width of the easement. Surveyor John M. Hennemuth, PLS determined that at the time the parties entered into the agreement, the entrance to the right of way was 21’ feet wide. N.T. 1/27/15, at 110; See also Plaintiffs’ Exhibit 2. Following defendant George Kessler’s construction of the ditch filled with riprap and the two (2) iron poles, John M. Hennemuth, PLS determined that the entrance to the right of way was reduced to 15.54’ feet. N.T. 1/27/15, at 110; See also Plaintiffs’ Exhibit 2.[1] The agreement states that “the width of [the] right of way shall be no greater than the current width of [plaintiffs’] driveway serving Lot #5.” See Joint Exhibit 5 (emphasis added). Since the width of the right of way was 21 ’ feet at the time the parties entered into the agreement, We find and order the defendants to restore the width of the entrance to the right of way to *541 the original width of 21’ feet. Therefore, defendants are ordered to remove the two (2) iron poles and riprap that caused the right of way to be reduced in size. Additionally, the defendants are also ordered to and must also extend the 16’ foot pipe located underground in order to restore access to the previous agreed upon width of 21 ’ feet.
7. Additionally, We find that defendant George Kessler’s September 20, 2011 letter to plaintiff Sam DeSimone has absolutely no bearing on this court. The letter has no affect on the agreement creating the right of way. Plaintiffs never agreed to, orally or in writing, the contents of the defendant’s unilateral letter. The September 20,2011 letter drafted by defendant George Kessler was simply a failed attempt to bully the plaintiffs and to unilaterally impose his terms and place his limitations on the controlling agreement.
8. The absurdity of Kessler’s self serving unilateral letter allegedly interpreting the right of way agreement can be best illustrated by a review of finding of fact 29, wherein Kessler in interpreting paragraph three (3) of the right of way agreement states “[a]nyone other than the three DeSimones who live at 102 Hidden Valley Drive must have the written permission to use any part of the ‘right of way’ for any reason.” (emphasis added). Taking Kessler’s unrealistically expansive view of the right of way agreement, if the DeSimones has another child, or chose to adopt one, there would now be four DeSimones or god forbid more with all additional family members needing Kessler’s written permission. Further, should someone become ill and be unfortunately located on the DeSimone’s property, the responding emergency medical team may also need Kessler’s written permission to make the most expedient response and rescue. The interpretation of defendant Kessler fails and its failure is due to its *542 extremity and the examples illustrate the need to ignore Kessler’s letter.
VI. CROSSCLAIMS FOR EJECTMENT AND TRESPASS
9. We also legally conclude that defendants’ evidence is not sufficient to establish their right to ownership or possession of the land upon which the plaintiffs’ septic sand mound and septic drain field is located, and therefore defendants ejectment claim fails. The survey map of John M. Hennemuth, PLS shows that the sand mound and drain field are entirely within the boundaries of plaintiffs’ property. See Plaintiffs’ Exhibit 1.
10. In support of the trespass claim, defendants argue that the plaintiffs’ sand mound causes an unnatural drainage of water from plaintiffs’ property onto the defendants’ property. See defendants’ proposed findings of fact, at fact 45. Defendants argue that this prevents them from properly maintaining their property. We legally conclude that the credible survey evidence established that plaintiffs’ sand mound and drainage field are not located on defendants’ property. Moreover, we find that defendants had open and obvious knowledge of this pre-existing sand mound when they purchased the realty from Dr. Ralph DeMario. After all this is not a concealed and subterranean septic tank, but an obvious three dimensional sand mound visible at a distance with the untrained eye. Finally, even if defendants were correct, which we believe they are not, then defendants have not presented sufficient evidence of any real harm or compensable damages that they suffered due to the alleged encroachment. As a result, a verdict will be entered in favor of plaintiffs with respect to defendants’ ejectment and trespass counterclaims.
*543 NON-JURY VERDICT PER PA.R.C.P. 1038
And now, this 10th day of June 2015, upon consideration of the competent, credible and relevant evidence introduced during the non-jury proceedings on January 27, 2015, and January 28, 2015, and the parties’ later supplemental submissions, after reproduction of the record and based upon the findings of fact and conclusions of law set forth in Sections II and III above, the following non-jury verdict is rendered pursuant to Pa. R.C.P. 1038:
1 .Anon-jury verdict is entered in favor of plaintiffs and against defendants regarding plaintiffs’ action to quiet title claim set forth in Count I of the complaint with all beneficial interpretations related thereto as contained within this non-jury verdict.
2. A non-jury verdict is entered in favor of plaintiffs and against defendants as to defendants’ ejectment claim as set forth in Count I of defendants’ answer and counterclaims, with all defendants’ obligations to correct driveway width and remove the offending stakes.
3. A non-jury verdict is entered in favor of plaintiffs and against defendants as to defendants’ trespass claim as set forth in Count II of defendants’ answer and counterclaims.
4. Plaintiffs have acquired an easement to use the right of way on defendants’ property in accordance with the terms set forth in the December 7, 2011 agreement as interpreted by this court in these findings of fact and conclusions of law and this non-jury decision per Pa.R.C.P. 1038.
5. Plaintiffs are entitled to exercise all rights and *544 privileges to utilize the right of way to obtain access to and from their gravel driveway as found in these findings of fact and conclusions of law and this non-jury decision as per Pa.R.C.P. 1038.
6. Defendants are prohibited from restricting plaintiffs, their family members, neighbors, delivery people, workers, or anyone else who may seek to obtain access to plaintiffs’ property via the right of way to enter the gravel driveway per the authority granted by this decision and a violation of this order shall subject defendants to the court’s contempt powers.
7. Defendants are ordered to remove the two (2) iron poles and riprap placed on both sides of the plaintiffs’ gravel driveway and to extend the 16’ foot long pipe so that access to the right-of-way is restored from 15.54’ feet to its original width of 21’ feet no later than thirty (30) days after the date of this order.
8. Defendants are ordered to remove the surveyor pins placed over the boundary line on plaintiffs’ property, which create a hazardous condition because they are protruding approximately (1’) foot above the ground with all deliberate speed and no later than thirty (30) days after the date of this order. If defendants fail to do so in a timely fashion, plaintiffs are authorized to remove the surveyor pins.
9. Defendants are to comply with the terms of this order immediately or suffer contempt. Defendants are to take and complete all corrective repairs within thirty (30) days of the date of this order.

. While Kevin M. Karsnak determined the entrance of the right of way to be a greater' width of 16.4’ feet, We conclude that John M. Hennemuth’s testimony and survey map are more credible because of his educational background and superior experience in surveying.